**Richmond**

KENNEDY FITZGERALD HANCOCK

v.

COMMONWEALTH OF VIRGINIA

No. 1482-88-2

Decided July 1, 1991

**COUNSEL**

Michael HuYoung (Jane Chittom, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

COLEMAN, J.—On July 11, 1987, Kennedy Fitzgerald Hancock and three companions robbed the people attending a turkey shoot at a clubhouse in Chesterfield County. At his bench trial, Hancock pled guilty to three counts each of armed robbery and use of a firearm during a robbery. Code §§ 18.2-58 and 18.2-53.1. He was also found guilty of arson, Code § 18.2-79, and three counts of attempted capital murder by arson, Code §§ 18.2-25 and 18.2-31(d).[1] On appeal, Hancock claims the Commonwealth did not prove the arson charge beyond a reasonable doubt. He also assigns several errors to his attempted capital murder convictions: (1) that the Commonwealth failed to prove beyond a reasonable doubt that he was a principal in the first degree to the arson and, therefore, because Code § 18.2-18 mandates that only a principal in the first degree can be convicted of capital murder, he cannot be convicted of attempted capital murder; (2) that the Commonwealth failed to prove beyond a reasonable doubt that he acted with the specific intent to kill; and (3) that the Commonwealth failed to prove each element of the three counts of attempted capital murder because it produced only one of the three victims who were allegedly robbed and, therefore, failed to prove the crucial element that each victim was robbed. We find no merit in these contentions and affirm Hancock's convictions.

At Hancock's suggestion, he and three companions planned to rob the people who were attending the turkey shoot at the clubhouse. Hancock, who had been to several turkey shoot gatherings before, knew that people with large amounts of cash would be there gambling late into the night. On the way to the clubhouse, Hancock, who was driving, stopped his truck at a store so one of his compatriots could purchase a container of gasoline. Hancock anticipated that only a few people would be left at the clubhouse when they arrived around 1:00 a.m. Instead, they found approximately eighteen people present. Wearing masks, the four men burst through the only door to the small wooden structure, which had dirt floors and no windows. One of the men fired a shot into the air and announced it was a stickup. Hancock, who was carrying a pistol, gathered wallets from some of those present. One of Hancock's accomplices, who was armed with a double barrel shotgun, fired a shot over one man's head.

---

[1] Now Code § 18.2-31(4).

After the robberies, two of Hancock's accomplices left the building. According to Hancock, after his two confederates left, he and Kevin W. Bell remained behind in the clubhouse with the can of gasoline. Hancock testified that he never intended to start a fire and that he had merely planned to spill the gasoline in front of the door so the smell would scare the victims. He maintained that he did not carry the gasoline into the clubhouse and that he did not place the foam rubber cushion in front of the door, pour gasoline on it, or strike the match that started the fire. Hancock claimed that Bell did all of these acts. However, Thomas Mays, the only victim to testify at trial, said that the two men divided the tasks between them. He acknowledged that one was more responsible, perhaps, than the other. Mays could not identify which man was Hancock and which was Bell because they were wearing masks. He testified as follows:

Q. The two individuals that came back in, when you say there was a seat on the couch are you referring to one cushion or a number of cushions?

A. One cushion.

Q. Did you see which one of the individuals took that cushion off?

A. No, I didn't.

* * *

Q. Did you see whether or not the other individual had something in his hands?

A. Yes.

Q. What did he have?

A. A can of gas.

Q. Now, after that first individual took the cushion off the couch where did he place it, on the floor?

A. Yes.

Q. What did the second individual that had the can, what did he do?

A. He poured the gas on it and the first man lit the fire.

Q. That would be the man that took the cushion off the couch?

A. Right.

Upon starting the fire, one of the two men commanded, "Stay in with your hands over your head. Don't come out for ten minutes or we will shoot." As the two men left, one shut the door behind them and the room filled immediately with smoke. Those trapped inside were afraid to leave by the door. They managed to put out the fire by smothering it with plywood and escaped by kicking through the back wall. No one was injured. The arson investigator who inspected the scene testified that the center pole of the structure had been charred by the fire.

## I. ARSON

Hancock contends the evidence was insufficient to support his conviction for arson under Code § 18.2-79. We disagree.

Hancock does not contest that the fire was incendiary in origin; he conceded the fire was deliberate and even testified to the manner in which it was set. He claims, instead, the Commonwealth failed to prove that the fire damaged the building or whatever damage may have occurred was insufficient to establish "burning" within the meaning of Code § 18.2-79.

The arson expert testified that while the boards used by the victims to put out the fire were charred because of those efforts to extinguish the fire, damage to the center pole supporting the roof of the structure was due to the fire set by Hancock and his accomplices. While Thomas Mays, one of the victims, did testify that the building was not damaged, the arson expert testified the center pole was, in fact, charred. On appeal, the decision of a trial court sitting without a jury is afforded the same weight as a jury's verdict and will not be disturbed unless plainly wrong or without evidence to support it. *King v. Commonwealth*, 217 Va. 601, 604, 231 S.E.2d 312, 315 (1977). The trial court considered and determined the credibility of the witnesses and the weight to be given their testimony. We consider the evidence in the light most favorable to the Commonwealth, affording it all reasonable inferences fairly deducible therefrom. *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). Viewed in this light, we find the evidence supports the finding that the fire, which was of incendiary origin, did damage to the building.

■ "The amount of 'burning' necessary to be shown is any amount, provided there is a perceptible wasting of the fiber of the building or object which is a subject of arson, or some part of that building or object, by fire." 2A Michie's Jurisprudence *Arson* § 1 (1981). While no Virginia case has directly addressed this proposition, we follow the precedent set by a majority of other states which hold that only a slight burning is necessary. *See* Annotation, *What Constitutes "Burning" to Justify Charge of Arson*, 28 A.L.R.4th 482, at §§ 3, 6 (1984).

■ Hancock also claims the Commonwealth failed to prove he was the one who actually ignited the match to start the fire. Proof that he struck the match and ignited the gasoline is unnecessary for a conviction under Code § 18.2-79. The statute provides that anyone who did "aid, counsel, or procure the burning or destruction" is guilty of arson. Having established the fire was incendiary in origin, the Commonwealth's remaining burden was to prove "the accused was a guilty agent in the burning within the scope of the statute," *Augustine v. Commonwealth*, 226 Va. 120, 123, 306 S.E.2d 886, 888 (1983), and this the Commonwealth did. Hancock acknowledged that he was one of the two men who remained behind when the fire was ignited. We know from Thomas Mays that Hancock either doused the cushion with gasoline or placed the cushion and used the match to ignite the gasoline. Either act was sufficient to constitute arson in violation of Code § 18.2-79. Also, Hancock admitted it was his idea to bring the gasoline along. The evidence was sufficient for the fact finder to find that Hancock took an active part in setting the fire and did "aid, counsel, or procure the burning." *See id.*

## II. ATTEMPTED CAPITAL MURDER

Hancock claims the Commonwealth failed in several respects to prove that he attempted to commit capital murder. He contends that Code § 18.2-18, as interpreted in *Johnson v. Commonwealth*, 220 Va. 146, 255 S.E.2d 525 (1979), *cert. denied*, 454 U.S. 920 (1981), permits only a principal in the first degree to be convicted of capital murder. He argues, and the Commonwealth concedes, that the logical extension of the *Johnson* decision leads to the conclusion that only a principal in the first degree can be convicted of

attempted capital murder.[2] He reasons that, since he was not the "triggerman" who ignited the fire, he cannot be convicted of an attempt to commit capital murder because he could not have been convicted of capital murder had the attempt been carried to fruition. He claims, therefore, that his convictions for attempted capital murder were faulty because the Commonwealth failed to prove that he was a principal in the first degree to the arson. Hancock also contends that the Commonwealth failed to prove that he had the specific intent to kill by setting the fire. We hold that the evidence was sufficient to prove that Hancock was a principal in the first degree to attempted capital murder.

Hancock contends that only the person who struck the match to ignite the gasoline and the cushion could be convicted as a principal in the first degree to attempted capital murder by arson. He contends that the Commonwealth's eyewitnesses could not identify whether he or his accomplice was the one to strike the match and set the fire. He argues that the evidence would, at most, prove he was a principal in the second degree since the Commonwealth failed to establish beyond a reasonable doubt that he was the "triggerman" who struck the match.

A principal in the first degree is one who is the instigator and moving spirit in the perpetration of a crime, who directs his associates and assists them in the actual commission. *Stapleton v. Commonwealth*, 140 Va. 475, 487, 124 S.E. 237, 241 (1924). A principal in the second degree, on the other hand, is more passive in his participation. He is "one not the perpetrator of the crime, who is present, aiding and abetting the act done, or keeping watch or guard at some convenient distance." *Ward v. Commonwealth*,

---

[2] For purposes of this appeal, we will accept without deciding, the proposition conceded by the Commonwealth. However, even though an attempt to commit capital murder is a lesser grade offense of capital murder, *see Willoughby v. Smyth*, 194 Va. 267, 271, 72 S.E.2d 636, 638-39 (1952), the capital punishment considerations which led the General Assembly to enact the proviso in Code § 18.2-18 which allows only a principal in the first degree to be held accountable and subject to the punishment for capital murder, do not necessarily dictate that where an accused is charged or only being prosecuted as a principal in the second degree, that he cannot be convicted of attempted capital murder. Who are principals in the first and second degree to an attempt to commit capital murder are problematic and have not been addressed on brief. Thus, since a resolution of this question is not necessary to our decision, we leave for another day whether the proviso in Code § 18.2-18 and the holding in *Johnson* require that a distinction be made as to how principals are to be punished for the non-capital offense of attempted capital murder.

205 Va. 564, 568, 138 S.E.2d 293, 296 (1964); *Snyder v. Commonwealth*, 202 Va. 1009, 1015, 121 S.E.2d 452, 457 (1961). There may be more than one principal in the first degree.

> This occurs when more than one actor participates in the actual commission of the offense. Thus, when one man beats a victim and another shoots him, both may be principals in first degree to murder. And when two persons forge separate parts of the same instrument, they are both principals in the first degree to the forgery.

2 LaFave & Scott, *Criminal Law* § 6.6 (2d ed. 1986).

In *Coppola v. Commonwealth*, 220 Va. 243, 257 S.E.2d 797 (1979), *cert. denied*, 444 U.S. 1103 (1980), multiple principals in the first degree were found to have committed capital murder, and in separate trials, two of the confederates were sentenced to death. Coppola had jointly participated with others in the fatal beating of a victim, which occurred during a robbery. After Coppola and his accomplice were convicted in separate trials and sentenced to death, Coppola claimed on appeal that under Code § 18.2-18 his conviction was erroneous since only the immediate perpetrator could be convicted of capital murder. The evidence showed that both men actively participated in the beating and in the planning and commission of the robbery. The Supreme Court upheld Coppola's conviction, even though his accomplice believed that his blows actually killed the victim. *Id.* at 257, 257 S.E.2d at 806-07. The Court said: "Since both . . . were convicted of the capital murder of [the victim], each was found by a jury to be an immediate perpetrator of that crime." *Id.*

■ Hancock's argument that there was a sole "triggerman" or perpetrator of the attempted capital murder by arson is without merit. Recently in *Strickler v. Commonwealth*, 241 Va. 482, 404 S.E.2d 227 (1991), *cert. denied*, 112 S. Ct. 386, the Court upheld a capital murder conviction holding that Strickler was an "immediate perpetrator" in a beating death for purposes of the capital murder statute because he had taken a "direct part in inflicting fatal injuries" by either striking the victim or by holding her down while his accomplice did so. Similarly, when Hancock poured gasoline on the cushion while Bell ignited it, he took a direct act in committing arson, thereby making him an "immediate perpetrator." The evidence established a degree of participation by Han-

cock that would make him a principal in the first degree. "A principal in the first degree is the one who actually starts the fire; while a principal in the second degree is one who is present and assists the actual incendiary." Curtis, *The Law of Arson* 124 (1936). Thus, because Hancock was an immediate perpetrator of arson, which was the means by which serious injury or death would result from those acts, if the requisite intent was proven, the evidence was sufficient to support the attempted capital murder conviction.

The evidence shows that Hancock played an active role in the direct setting of the fire. It was his idea to stop and purchase gasoline; he was one of two masked men acting in concert who removed a cushion from a chair, placed it in front of the door, poured gasoline on it, set it on fire and said, "Stay in with your hands over your head. Don't come out for ten minutes or we will shoot." As noted, both the person who struck the match and the one who doused the cushion with gasoline for the other to ignite it were immediate perpetrators to arson. Both men were principals in the first degree. Both provided the direct means to ignite the fire. Placing the flammable material in place for another to ignite it makes that person a perpetrator. Viewed in the light most favorable to the Commonwealth, this evidence supports the judgment that Hancock was a principal in the first degree to the arson. *See Coppola v. Commonwealth*, 220 Va. at 250, 275 S.E.2d at 806-07; *Augustine v. Commonwealth*, 226 Va. at 123, 306 S.E.2d at 888; *Strickler v. Commonwealth*, 241 Va. 482, 404 S.E.2d 227, *cert. denied*, 112 S. Ct. 386 (1991).

Hancock also contends the Commonwealth failed to prove that he had a specific intent to kill anyone. In characterizing the intent required for a conviction of attempted murder, the Supreme Court said in *Merritt v. Commonwealth*, 164 Va. 653, 180 S.E. 395 (1935), "To commit murder one need not intend to take life; but to be guilty of an attempt to murder, he must so intend. It is not sufficient that his act, had it been fatal, would have been murder." *Id.* at 661, 180 S.E. at 399. Specific intent may be shown by circumstances, including by a person's conduct or by his statements. *Id.* at 662, 180 S.E. at 399; *Banovitch v. Commonwealth*, 196 Va. 210, 216, 83 S.E.2d 369, 373 (1954). The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact. *Johnson v. Commonwealth*, 209 Va. 291, 295, 163 S.E.2d 570, 574 (1968). The mere

possibility that the accused might have had another purpose than that found by the fact finder is insufficient to reverse a conviction on appeal. *Id.* It is permissible for the fact finder to have concluded that a person intended the immediate, direct, and necessary consequences of his voluntary acts. *See Sandstrom v. Montana*, 442 U.S. 510 (1979); *Stokes v. Warden, Powhatan Correctional Ctr.*, 226 Va. 111, 306 S.E.2d 882 (1983).

Applying these settled principles, we cannot disturb the trial court's finding that Hancock had the specific intent to kill. Hancock and Bell poured gasoline on a cushion, placed it in front of the only door which provided a means of egress, and set it on fire. They also threatened the eighteen people that they would be shot if they attempted to leave. In *Howard v. Commonwealth*, 207 Va. 222, 148 S.E.2d 800 (1966), the defendant appealed his conviction for attempted murder during the commission of the robbery. *Id.* at 223, 148 S.E.2d at 801. Just as Hancock did, the defendants in *Howard* threatened their victims. Just as Hancock claims that his threats were intended to frighten the victims and to prevent them from following him and his three companions, the defendants in *Howard* claimed the threats were intended only to frighten the victim "into keeping quiet." *Id.* at 227, 148 S.E.2d at 803. Howard thrust a pistol at one of his victims and it discharged. Although Howard maintained the shooting was accidental, the court stated: "Defendant's threats and conduct, when considered in the light of the attending circumstances, were sufficient to show that the criminal purpose had been formed in their minds." *Id.* at 228-29, 148 S.E.2d at 804.

We hold that the evidence, particularly Hancock's threats and conduct in setting the fire, were sufficient to establish that he had a specific intent to kill. Whether the required intent existed was a question for the trier of fact. *Nobles v. Commonwealth*, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). In evaluating the trial court's decision in the light most favorable to the Commonwealth, and granting it any inferences, *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), we cannot say the decision was plainly wrong or without evidence to support it, *Stockton v. Commonwealth*, 227 Va. 124, 145, 314 S.E.2d 371, 385, *cert. denied*, 469 U.S. 873 (1984). Therefore, we cannot disturb the conviction.

Finally, Hancock claims that because only one of the three victims testified at trial, the Commonwealth failed to prove that a victim was robbed in the other two attempted capital murder charges and, therefore, failed to prove an essential element of those two charges. We find no merit in the claim. Sufficient evidence was adduced to establish that the other two victims were robbed. Thomas Mays, the one robbery victim who testified, stated that money was taken from the other two victims at gunpoint by Hancock or his accomplices.

For the foregoing reasons, we find no error in Hancock's convictions, and accordingly affirm.

*Affirmed.*

Duff, J., concurred.

Benton, J., dissenting.

I dissent from the majority's holding that Kennedy Fitzgerald Hancock could be tried for attempted capital murder, because he merely aided and abetted his companion while his companion ignited a chair cushion for the purpose of facilitating an escape from a robbery.

> In the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree; provided, however, that except in the case of a killing for hire under the provisions of § 18.2-31(b) an accessory before the fact or principal in the second degree to a capital murder shall be indicted, tried, convicted and punished as though the offense were murder in the first degree.

Code § 18.2-18.

In accordance with the explicit provision of the statute, it is "essential in a prosecution for capital murder, except in the case of murder for hire, that the heretofore unnecessary distinction be drawn between principals in the first and second degree, assuring that *only the person who is the immediate perpetrator may be a principal in the first degree and thus liable to conviction for capital murder.*" *Johnson v. Commonwealth*, 220 Va. 146, 150, 255 S.E.2d 525, 527 (1979), *cert. denied*, 454 U.S. 920 (1981) (em-

phasis added). Because attempted capital murder is a lesser included offense of capital murder, the Commonwealth concedes on brief the logical proposition that "[t]he defendant . . . can be convicted of attempted capital murder only if he is shown to have been a principal in the first degree."

The Commonwealth prosecuted this case on the same theory that it argues on appeal: that whether Hancock poured the gasoline or lit it, he was the criminal agent in starting the fire. However, in interpreting Code § 18.2-18, the Supreme Court observed the obvious: "only the person who is the *immediate* perpetrator may be a principal in the first degree and thus liable to conviction for capital murder." *Johnson*, 220 Va. at 150, 255 S.E.2d at 527 (emphasis added). A principal in the first degree generally is one who has committed each and every constituent element of the defined offense. *See* W.R. LaFave & A.W. Scott, Jr., *Handbook on Criminal Law* 496-97 (1972). No evidence in this record proves that Hancock carried the gasoline into the building, poured the gasoline onto the cushion, or ignited the cushion. Only one of the eighteen persons who was present in the building testified at trial. He testified that he could not identify which of the robbers lit the match. When asked, "Was it just one individual who did most of the acts as far as pouring the gasoline on the cushion and lighting it?" he responded, "yes." Indeed, the Commonwealth proved in a separate prosecution that Hancock's companion, Kevin Winzell Bell, did all of those acts. *See Bell v. Commonwealth*, 11 Va. App. 530, 532, 399 S.E.2d 450, 452 (1991). On this evidence, the Commonwealth failed to prove that Hancock did more than aid in preparing the cushion for his companion, who lit the fire.

> Under the so-called "triggerman" rule, only the actual perpetrator of a crime delineated in Code § 18.2-31 may be convicted of capital murder and subjected to the penalty of execution, except in the case of murder for hire. One who is present, aiding and abetting the actual murder, but who does not actually fire the fatal shot, is a principal in the second degree and may be convicted of no greater offense than first-degree murder.

*Frye v. Commonwealth*, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986) (citations omitted).

According to the majority's rationale, any person who aids, counsels, or procures the burning is a "perpetrator of arson" and could be found guilty of attempted capital murder. Presumably, the majority would also hold that one who directly counsels an arsonist could be convicted of capital murder even if another person was the immediate perpetrator who actually caused a death. This reasoning does not withstand close scrutiny. It is of no consequence that Hancock "played an active role in the direct setting of the fire" or that the arson statute declares aiders and abettors to be perpetrators. Hancock was neither a principal in the first degree, the immediate perpetrator, nor the party who actually committed the arson.

The evidence in this case proved at most that Hancock was a principal in the second degree to the arson offense. Thus, although he may be treated identically as a principal in the first degree for the purpose of punishment as an arsonist, he cannot be considered the immediate perpetrator. *See* Code § 18.2-18; *Cheng v. Commonwealth*, 240 Va. 26, 42-43, 393 S.E.2d 599, 607-08 (1990). For purposes of the crime of arson, "[a] principal in the first degree is the one who actually starts the fire; while a principal in the second degree is one who is present and *assists* the actual incendiary." A. Curtis, *The Law of Arson* 124 (1936) (emphasis added). To prove Hancock was an aider and abettor of the crime of arson:

> the evidence must show that [he] was not only present but that [he] procured, encouraged, countenanced, or approved commission of the crime. . . . [He] must share the criminal intent of the party who actually committed the arson or be guilty of some *overt act* in furtherance thereof.

*Augustine v. Commonwealth*, 226 Va. 120, 124, 306 S.E.2d 886, 888 (1983) (emphasis added). The Commonwealth's case proved exactly this and no more. There is no evidence that Hancock was the one who actually committed the arson although the record is replete with evidence that he was present and "procured, encouraged, countenanced, [and] approved commission of the crime." *Id.* That suffices to prove only liability as a principal in the second degree.

The majority's theory is based on a faulty premise: it mischaracterizes the attempted capital murder convictions by including the words "by arson." The trial court tried and convicted

Hancock of "an attempt to commit a capital offense, to-wit: murder, during the commission of robbery." The means to accomplishing the murder, under the Commonwealth's theory, was through the burning. Arson, on the other hand, is a category of crime, a combination of *mens rea* and *actus reus* elements. That the means used to accomplish the attempted killing also amounts to an independent crime is incidental to this issue. Thus, it is more accurate for the majority to say "by burning," if it need be said at all.

This seemingly semantic distinction clarifies that the issue is not whether Hancock can be treated as a principal in the first degree for arson under Code § 18.2-79, but is whether Hancock was an actual principal in the first degree, the immediate perpetrator, or the "triggerman" in the attempt to murder by whatever means so chosen. *Johnson*, 220 Va. at 150, 255 S.E.2d at 527. That incendiary means were employed in this case has no bearing on the analysis. The question remains the same whether the attempt to murder was made through shooting, knifing, bombing, or burning: was Hancock the triggerman? This was the issue presented on appeal and addressed by both parties on brief. Whether Hancock was equally as culpable of the arson offense as the unknown offender who lit the fire is immaterial. The Commonwealth's evidence unequivocally fails to prove who doused the cushion with gasoline and who struck the match, thus triggering the fire. The greatest crime for which Hancock could be prosecuted is attempted murder in the first degree. Code § 18.2-18.

Because of Code § 18.2-18, "it is . . . essential . . . that the heretofore unnecessary distinction be drawn between principals in the first and second degree, assuring that only the person who is the immediate perpetrator may be . . . liable to conviction for capital murder." *Johnson*, 220 Va. at 149-50, 255 S.E.2d at 527. The failure of the Commonwealth to prove who doused the cushion and who lit the match is indistinguishable from the Commonwealth's failure to prove who pulled the trigger. *See id.* In my judgment, the majority's analysis is contrary to the *Johnson* decision. In clear and unambiguous terms, "Code § 18.2-18 does not permit a principal in the second degree to be convicted of capital murder." *Cortner v. Commonwealth*, 222 Va. 557, 563, 281 S.E.2d 908, 911 (1981).

No evidence establishes that the degree of Hancock's participation exceeded the bounds of aiding and abetting. This record contains no evidence to support the majority's assertion that Hancock was a principal in the first degree. To state that "he was one of two masked men acting in concert" in the incident simply does not suffice to prove that Hancock was an immediate perpetrator rather than a principal in the second degree. I agree with the majority that even "[p]lacing the flammable material in place for another to ignite makes that person a perpetrator" for purposes of the arson statute. *See* Code § 18.2-79. However, for a conviction of attempted capital murder, the requirement of Code § 18.2-18 must also be satisfied. Thus, the proof must establish that he was "the immediate perpetrator," i.e., that he actually set the fire. *Johnson*, 220 Va. at 149-50, 255 S.E.2d at 527. Since the evidence proves only that Hancock was a principal in the second degree, the majority erroneously concludes that he could be convicted of attempted capital murder.

I disagree that this case is controlled by *Strickler v. Commonwealth*, 241 Va. 482, 404 S.E.2d 227, *cert. denied*, 112 S. Ct. 386 (1991). Rather, it is more akin to *Cheng v. Commonwealth*, 240 Va. 26, 393 S.E.2d 599 (1990), where the Supreme Court found the evidence insufficient to prove the accused guilty of being a principal in the first degree even though the accused actively participated in the preparation and execution of the crime.

> The evidence show[ed] that Cheng "masterminded" the criminal plan. He expressed an intent to commit robbery. He directed his accomplices to obtain the "sawed-off" shotgun. He was seen talking with [the victim] on the evening [the victim] was last seen alive. He possessed a .32 caliber semi-automatic pistol — the type [of] weapon used to kill [the victim]. Additionally, Cheng made incriminating statements to Officer Kwan.
>
> * * *
>
> Kwan . . . stated, "[Cheng] . . . told me that *he* had to do it because the man put the contract on him."

*Id.* at 43, 393 S.E.2d at 608. The Court concluded that this was only sufficient to prove Cheng was a principal in the second degree. "The evidence, at most, creates a strong suspicion that Cheng was the 'trigger man' . . . , however, suspicion of guilt, *no*

*matter how strong*, is insufficient to sustain a criminal conviction." *Id.*

Hancock's case is similar to *Cheng.* The evidence demonstrated that Hancock participated extensively in the preparation and execution of the crime. There is, however, no more than a suspicion that Hancock actually set the cushion afire. Consequently, there is only a suspicion that he was the "immediate perpetrator" to the attempted capital murder, that being a principal in the first degree. *Strickler* is dissimilar because in that case "the physical evidence point[ed] to a violent struggle between [both] assailants and the victim," during which the victim was killed. *Id.* at 494, 404 S.E.2d at 235. Consistent with its earlier cases, the Supreme Court "adhere[d] to the view that *where two or more persons take a direct part in inflicting fatal injuries*, each joint participant is an 'immediate perpetrator' for purposes of the capital murder statute." *Id.* I would agree that *Strickler* would control if the evidence showed that Hancock and another both lit a match and jointly ignited the cushion. But that is not the evidence in the record before this Court.

Accordingly, I disagree and dissent.