COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Clements and McClanahan
Argued at Richmond, Virginia


GEORGE ROBERT FRAZIER

                                                 MEMORANDUM OPINION* BY
v.        Record No. 0725-06-2                   JUDGE ELIZABETH A. McCLANAHAN
                                                 JULY 31, 2007
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF HENRICO COUNTY
                              L.A. Harris, Jr., Judge

         Anthony G. Spencer for appellant.

         Leah A. Darron, Senior Assistant Attorney General (Robert F.
         McDonnell, Attorney General, on brief), for appellee.


        George Robert Frazier appeals his bench trial conviction for stalking in violation of Code

§ 18.2-60.3.  He argues the evidence was insufficient to sustain his conviction.  Finding the

evidence sufficient, we affirm.

        On appeal, when considering a challenge to the sufficiency of the evidence, a reviewing

court does not "ask itself whether *it* believes that the evidence at the trial established guilt

beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in

original) (citation and internal quotation marks omitted).  Rather, "the relevant question is

whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." Id. at 319 (emphasis in original).  "The inferences to be drawn from proven

facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v.

Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991).

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Under settled principles, we review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and *all fair inferences to be drawn therefrom*." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis in original) (internal quotation marks and citation omitted).

So viewed, the evidence[1] demonstrated that in mid-May of 1999, the victim moved from her apartment on Park Avenue in the City of Richmond to an apartment on West Grace Street and did not publish her new address or list her phone number. In mid-July of 2003 while the victim was unloading groceries at her apartment on West Grace Street, Frazier stopped her, addressed her by name, and said he used to be her neighbor on Park Avenue. The victim, who did not know Frazier, told him she had "gotten married and moved." Frazier stated, "I'm sorry," then remarked, "I always thought you were a nice person." The victim was frightened because she did not know Frazier and he knew where she had moved. On January 3, 2004, the victim was getting into her vehicle that was parked around the block from her apartment on West Grace Street when Frazier drove by, stopped abruptly in the middle of the street, exited his vehicle, approached the victim's car, and asked whether she was still married. When the victim responded "yes," Frazier stated he "wanted to share his life" with her. In late May of 2005, the

---

[1] The Commonwealth argues that we should also consider testimony that the trial court, in a bench trial, specifically stated it would not consider or rely on because such evidence was not linked to Frazier. For example, the Commonwealth contends that anonymous gifts and cards left on the victim's porch, in her mailbox, and on or near her car; a love poem; a compact disc; and a "much more personal" letter the victim received should be considered when analyzing the sufficiency issue. However, the trial court specifically ruled it would not consider or rely on these items that were not linked to Frazier. On appeal, in determining whether the evidence was sufficient, we consider all of the evidence *admitted* by the trial court. See Lockhart v. Nelson, 488 U.S. 33, 41-42 (1988).

victim moved to Fitzhugh Avenue in Henrico County and again did not publish her new address and did not tell anyone her new address. She changed her phone number and kept it unlisted.

At trial, Jesse Goode, the victim's neighbor on Fitzhugh Avenue, testified he had noticed Frazier driving "up and down the neighborhood for the last month." Goode observed Frazier "stop in front of [the victim's] residence . . . ." Goode further testified Frazier would "go up and down the street three or four times in the afternoon hours, sometimes as late as 10:00 o'clock at night." Goode testified Frazier drove to the victim's home on July 14, 2005, during the early morning and placed something on the victim's porch.[2] After Goode reported this incident to the victim, the victim testified she "became very scared," and Goode observed her immediately begin to cry.

Pam Profitt, another neighbor on Fitzhugh Avenue, noticed Frazier's vehicle driving through the neighborhood every evening for about a month and observed that Frazier slowed down in front of the victim's home. In the afternoon on July 15, 2005, the victim was standing outside with Goode and Profitt, when they saw Frazier drive by, slowing down as he drove past the victim's home. After observing Frazier as the driver of the vehicle, the victim stated to her neighbors that he was the "man who's been following me around." The victim went inside her home. Profitt followed Frazier in her vehicle, and when they were stopped beside one another at a stoplight, Profitt asked Frazier why he kept driving through their neighborhood. Frazier twice responded he was "taking care of business." When Profitt suggested he was "stalking" the

---

[2] At trial, Goode testified he saw Frazier place something on the victim's porch at approximately 3:00 a.m. Defense counsel introduced a document showing that Frazier was in the hospital on July 14, 2005, between 2:02 a.m. and 4:29 a.m. The trial court considered that Goode may have been confused as to the exact time, and characterized the evidence as showing that Goode saw Frazier "in the early morning hours" of that day. Because "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented," Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995), we defer to the trial court's judgment on that factual issue.

victim, the stoplight turned green and Frazier drove away without responding. Approximately thirty minutes later, Frazier telephoned the victim at her new, unlisted telephone number to apologize and stated he "never meant to hurt" the victim.

Frazier was convicted of stalking under Code § 18.2-60.3(A), which provides that any person who engages in conduct directed at another person on more than one occasion "with the intent to place, or when he knows or reasonably should know that the conduct places that other person in reasonable fear of death, criminal sexual assault, or bodily injury" is guilty of Class 1 misdemeanor stalking. Prior to 2001, this Code section required that the accused must be shown to have acted "with the intent to place, or with the knowledge that the conduct places, [the victim] in reasonable fear of death, criminal sexual assault, or bodily injury [to the victim] or to [the victim's] family or household member." Code § 18.2-60.3(A). In Bowen v. Commonwealth, 27 Va. App. 377, 499 S.E.2d 20 (1998), the Court held that the pre-2001 version of the statute required the Commonwealth to prove that the defendant either intended to place the victim in reasonable fear of death, criminal sexual assault, or bodily injury, or actually knew that such fear would result from his conduct for the crime of stalking to be proven. In 2001, however, the Virginia General Assembly amended Code § 18.2-60.3(A), expanding the statute to include conduct that the accused "reasonably should know" would create such a fear, and thereby adding "constructive knowledge" to the *mens rea* requirement of stalking. See Morrison v. Commonwealth, 37 Va. App. 273, 280, 557 S.E.2d 724, 728 (2002) ("constructive knowledge" means "under circumstances where one reasonably should know"); see also Black's Law Dictionary 888 (8th ed. 2004) ("constructive knowledge" is "knowledge that one using reasonable care or diligence should have, and therefore is attributed by law to a given person"). This statutory amendment "change[d] the proof of knowledge of the defendant," House Bill 2112, Summary as Passed (2001), and "remove[d] the barriers to prosecution by specifying that

- 4 -

it is not necessary to prove the offender's intent to carry out a threat . . . ."  Virginia Criminal

Sentencing Commission, Impact Analysis on Proposed Legislation for House Bill 2112 (2001).

Under our standard of review, viewing the evidence in the light most favorable to the

Commonwealth, including any reasonable inferences therefrom, the evidence proved that

Frazier, a complete stranger to the victim, continued finding and approaching the victim over a

number of years.  On the second occasion that the victim stated to Frazier she was married,

Frazier made an unwanted romantic and intimate advance on her when she was getting into her

vehicle parked near her apartment building.  Cf. Parker v. Commonwealth, 24 Va. App. 681,

686, 485 S.E.2d 150, 152-53 (1997)[3] (affirming stalking conviction based, in part, because

"victim's silent demeanor on the phone immediately indicated to appellant that his phone calls

were not welcome").  Frazier's conduct persisted despite the fact that the victim moved to two

different unpublished addresses, changed her telephone number, protected the number as

unlisted, and rejected Frazier's advances by stating she was married.  Frazier was seen driving by

the victim's home multiple times a day for at least a month, where he slowed down and stopped

when he reached the victim's home.  He subsequently placed something on her porch during the

early morning hours on July 14, 2005.  The next day, after Frazier drove by and slowed down in

front of the victim's home again, the victim's neighbor followed him out of the neighborhood

and confronted him.  Frazier then acknowledged he caused the victim to experience fear that she

would be harmed when he called to apologize and stated "he *never* meant to hurt her."

(Emphasis added).  See Parker, 24 Va. App. at 686, 485 S.E.2d at 153 (trial court had factual

basis to conclude appellant knew his phone calls would be interpreted as indicative of an

impending physical threat when he stated "[d]on't be afraid" to the victim).  That conversation

---

[3] Parker was decided under the pre-2001 version of Code § 18.2-60.3(A), applying a more stringent standard, that required the accused to have acted with the intent to place or with the knowledge that the conduct placed the victim in such reasonable fear.

further evidenced that he reasonably should have known, that his conduct placed the victim in reasonable fear as described under Code § 18.2-60.3(A). See People v. Stuart, 742 N.Y.S.2d 767, 768-69 (N.Y. App. Term 2002), aff'd, 797 N.E.2d 28 (N.Y. 2003), (explaining that the Model Antistalking Code for States "ensures that accused stalkers do not escape criminal liability by saying that however outrageous their conduct might have been, it was not their actual intent to cause the requisite fear" (citations and internal quotation marks omitted)). The post-2001 amendment to Code § 18.2-60.3(A) adopted by the General Assembly, reciting similar language as used in the Model Antistalking Code for States,[4] makes clear the statute applies to conduct which the offender "reasonably should know" places the victim in such a fear. See 2001 Va. Acts, ch. 197; see also Gender Bias in the Courts Task Force, Gender Bias in the Courts of the Commonwealth, Final Report (October 2000); Jane Marum Roush, Gender Bias in the Courts of the Commonwealth of Virginia: Gender Bias Task Force: Comments on Substantive Law Issues, 58 Wash. & Lee L. Rev. 1095 (2001).

A rational fact finder could reasonably conclude Frazier, a complete stranger to the victim, engaged in conduct directed at the victim on more than one occasion that he reasonably should have known would place the victim in reasonable fear of death, criminal sexual assault, or bodily injury. We, therefore, affirm his conviction.

Affirmed.

---

[4] Section 2(b) of the Model Antistalking Code for States provides that any person who

> has knowledge or *should have knowledge* that the specific person will be placed in reasonable fear of bodily injury to himself or herself or a member of his or her immediate family or will be placed in reasonable fear of the death of himself or herself or a member of his or her immediate family

is guilty of stalking. National Criminal Justice Association, Project to Develop a Model Antistalking Code for States, Washington, DC: U.S. Department of Justice, National Institute of Justice (1993) (emphasis added).