COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Senior Judge Coleman
Argued at Alexandria, Virginia


NELSON RAFAEL MELENDEZ

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1185-09-4                      JUDGE SAM W. COLEMAN, III
                                                            MAY 4, 2010

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                          Gordon F. Willis, Judge

         Joseph E. McGuire, Jr., for appellant.

         Richard B. Smith, Special Assistant Attorney General (William C.
         Mims, Attorney General, on brief), for appellee.


         In addition to two felonies, Nelson Rafael Melendez ("appellant") was convicted of the

misdemeanor offense of providing false information to a law enforcement officer in violation of

Code § 18.2-461.  On appeal, he asserts the trial court erred in denying his motion to strike the

misdemeanor offense.  He also contends the trial court erred in failing to consider the sentencing

guidelines prior to imposing sentence.  Finding no error, we affirm.

                                        Background

         Appellant and his wife, Maria Melendez ("Melendez"), appeared at a local branch of the

Department of Motor Vehicles (DMV) at approximately 4:30 p.m.  DMV employee Cynthia

Johnson assisted them.  Melendez did not speak, but appellant advised Johnson that Melendez

was there to apply for a new driver's license.  After taking the application, Johnson asked

Melendez for identification.  Appellant appeared to translate Johnson's request in Spanish, and

───────────────

         * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Melendez handed an identification card to appellant, who, in turn handed it to Johnson. The card indicated Melendez had been a permanent resident of the United States since February 2007.

Upon inspecting the identification card, Johnson suspected it was illegitimate. She asked appellant if Melendez had any other form of identification. After speaking with Melendez in Spanish, appellant informed Johnson that Melendez's Virginia driver's license had not been returned to her following a bank transaction. Johnson advised appellant she needed some other form of identification because the identification Melendez had provided "was subject to verification by someone higher than myself." After appellant produced Melendez's social security card, Johnson asked the couple to wait at her window while she submitted the identification card to her manager for inspection.

Johnson's manager agreed the identification card appeared suspicious and turned the matter over to DMV Special Agent Richard Knick. Johnson returned to her window and asked appellant and Melendez to be seated in the lobby. Johnson then assisted other customers until her manager appeared and asked Johnson to point out Melendez. When Johnson did not see Melendez in the lobby, she summoned appellant to her window. Johnson asked appellant about Melendez's whereabouts, and appellant told Johnson she was in the restroom.

Johnson's manager went to the restroom, but failed to find Melendez there. Appellant remained in the lobby area for "three or four minutes" before asking Johnson a question and then returning to his seat. After waiting approximately three more minutes, appellant left the building without retrieving Melendez's documents.

Upon learning appellant had left, Knick went to the parking lot and intercepted appellant as he was driving away. Melendez was not in the car with appellant. Knick described the encounter as follows:

> I was in uniform, displaying my badge of authority. I asked the
> individual – I said were you just in the DMV. He said yes. I asked

him were you with a female, adult female. He said yes. I said
where is she at. He says I don't know. I said who is she. And he
states, she is my friend.

Knick asked appellant for his driver's license and noticed the last name and the address on appellant's license were identical to those on the woman's identification documents Melendez had given Johnson. When Knick confronted appellant with this information, appellant responded, "She is my wife."

Appellant accompanied Knick back inside DMV for further questioning. Appellant told Knick his wife was from El Salvador, had been denied residency status, and had purchased the permanent resident card "on the street" for one hundred dollars. Appellant said he had warned her not to use the card. Appellant told Knick his wife was employed by "Charlotte Russo," [sic] a women's clothing store. Appellant also told Knick his wife worked for a bookstore. On further questioning, appellant denied having any family in the immediate area.

Appellant acknowledged he and Melendez had gone to DMV together, but she had left because she "got scared." Appellant stated he did not know where she had gone. After taking Knick's business card and pager number, appellant assured Knick he would attempt to locate Melendez and get back in touch.

When Knick heard nothing further from appellant, Knick attempted to contact Melendez at her work address, Charlotte Russe, a clothier. He learned, however, she was not employed there, but rather, she worked for a cleaning contractor. Upon further investigation, Knick also discovered that, contrary to appellant's statement he had no family in the area, appellant had relatives in Woodbridge.

After being unable to locate Melendez at her workplace, Knick placed appellant's home under surveillance for two days. Knick did not observe Melendez entering or leaving the house, but on one evening, he saw a light being turned on in the house. When Knick and another officer

then approached the house and knocked at the back door, the lights and a television visibly in use upstairs were turned off in response to the officer's knocking.

Knick immediately called appellant's cell phone. Appellant explained his sister-in-law was in the house and that he was on his way home. Upon appellant's arrival, he informed the officers Melendez had returned to her home in El Salvador. The officers searched appellant's residence and found women's clothing in the master bedroom. They also found an employment card in Melendez's name. The card had expired approximately six months earlier. Upon being confronted with this information, appellant told the officers his wife "had gotten a ride with an individual who was exporting cars out of the country."

<u>Analysis</u>

I.

Code § 18.2-461 provides that "[i]t shall be unlawful for any person (i) to knowingly give a false report as to the commission of a crime to any law-enforcement official with intent to mislead[.]" Appellant argues the evidence was insufficient to prove beyond a reasonable doubt he violated the statute because he did not give a false report as to the commission of a crime.

When faced with a challenge to the sufficiency of the evidence, "we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" <u>Kelly v. Commonwealth</u>, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (citations omitted); <u>see also</u> <u>McGee v. Commonwealth</u>, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). This deference applies not only to the historical facts themselves, but the inferences from those facts as well. "The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." <u>Hancock v. Commonwealth</u>, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991).

Appellant's objection at trial was limited to his complaint that the evidence failed to prove he gave the officer false information:

> Officer Knick testified that [appellant] may have not given him accurate information but all the other information that he gave was correct and accurate. His name, where he lived, produced a valid ID document, told him he didn't know where his wife is. Well, unfortunately he doesn't know where his wife is. If she has left, she has left. He has no way of providing information to the officer that he doesn't have.
>    Officer Knick testified that he was told that by [appellant] that his wife worked at Charlotte Russo, a store like that. Well there is – he may not know the exact name but there is a Ross store at Potomac Mills Mall, a clothing store at Potomac Mills Mall and he also said his wife worked at a bookstore. She may have not worked directly for the bookstore as Officer Knick had discover[ed], but she worked in a cleaning company that performed services for this bookstore. So I don't see, your Honor, based on the Government's evidence what exactly was the incorrect or misinformation or false information that [appellant] gave to Officer Knick. In fact, I think he was quite honest and even told them that his wife had purchased a forged ID, how they paid for it and all that. So I would move to strike based on the lack of clear evidence that [appellant] misinformed Officer Knick.

The evidence, viewed in the light most favorable to the Commonwealth, establishes that appellant did, in fact, give the officer false information—he lied about Melendez's status as his wife and lied about numerous bits of information that made it harder for Officer Knick to locate her. He lied about where she worked, lied about having family in the area, and then lied concerning Melendez's whereabouts, saying he did not know where she was and then saying she had returned to El Salvador. Thus, the evidence was sufficient to support this element of the offense.

Appellant also contends the evidence failed to prove the false report was "as to the commission of a crime." Noting he was truthful about the forged nature of the document provided to DMV and his assistance in uttering the application, he contends his false statements concerning Melendez's place of employment and their relationship fall outside the proscription

- 5 -

of Code § 18.2-461.  Appellant failed to raise this issue at trial.  Under Rule 5A:18, the "same argument must have been raised, with specificity, at trial before it can be considered on appeal."  Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004).  As quoted above, appellant contended only that the evidence failed to prove he "misinformed [the officer]" or gave him "false information."  Thus, we hold Rule 5A:18 bars our consideration of this issue.[1]

II.

Appellant also maintains that the trial court erred in failing to consider the sentencing guidelines prior to sentencing him.

Appellant acknowledges he did not move for a presentence report, but asserts that the trial court had an "affirmative obligation" under Code § 19.2-298.01(A)[2] to request the preparation of sentencing guidelines and to consider the guidelines prior to imposing sentence.

---

[1] To the extent appellant raises Rule 5A:18 and its "ends of justice" exception on brief, we note he argues the exception applies merely because "the evidence was wholly insufficient to support [his] conviction."  However, this is not the standard.  See, e.g., Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) (holding that the mere failure to prove an element of the offense is insufficient to justify invocation of the "ends of justice" exception).  Further, other than the statute itself, appellant fails to cite any authority in support of his argument on the merits of this issue.  We conclude the failure is significant on the facts of this case, and we hold that appellant's argument as to this element of the offense is waived.  See Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008) (holding that where an appellant's failure to cite any legal authority as required by Rule 5A:20(e) is "significant," the Court may treat the issue as waived).

[2] Code § 19.2-298.01(A) provides as follows:

> In all felony cases, other than Class 1 felonies, the court shall (i) have presented to it the appropriate discretionary sentencing guidelines worksheets and (ii) review and consider the suitability of the applicable discretionary sentencing guidelines established pursuant to Chapter 8 (§ 17.1-800 et seq.) of Title 17.1.  Before imposing sentence, the court shall state for the record that such review and consideration have been accomplished and shall make the completed worksheets a part of the record of the case and open for inspection.  In cases tried by a jury, the jury shall not be presented any information regarding sentencing guidelines.

As Code § 19.2-298.01 applies only to felony convictions, we exclude appellant's misdemeanor conviction under Code § 18.2-461 from our discussion. With respect to his felony convictions, appellant does not assert that his sentences exceeded the maximum limits set by statute. When a statute prescribes a maximum imprisonment penalty and the sentence does not exceed the maximum, the sentence will not be overturned as being an abuse of discretion. Jett v. Commonwealth, 34 Va. App. 252, 256, 540 S.E.2d 511, 513 (2001) (citing Hudson v. Commonwealth, 10 Va. App. 158, 160-61, 390 S.E.2d 509, 510 (1990)). Further, Code § 19.2-298.01(F) provides that "[t]he failure to follow any or all of the provisions of this section or the failure to follow any or all of the provisions of this section in the prescribed manner shall not be reviewable on appeal or the basis of any other post-conviction relief."

Accordingly, we are foreclosed from considering appellant's argument.

Affirmed.