COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judge Humphreys and Senior Judge Bumgardner
Argued at Salem, Virginia

UNPUBLISHED

WESLEY ADAM WILLIAMS

MEMORANDUM OPINION[*] BY
v.      Record No. 1700-14-3                    JUDGE RUDOLPH BUMGARDNER, III
                                               NOVEMBER 10, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

Shelly R. James for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Wesley Adam Williams appeals his convictions of attempted capital murder of a law

enforcement officer, Code §§ 18.2-25 and 18.2-31, and use of a firearm in the commission of a

felony, Code § 18.2-53.1.[1]  He contends the evidence was insufficient to prove that he was the

person who shot at the law enforcement officer or that he had the specific intent to commit murder.

Concluding the evidence was sufficient to support the convictions, we affirm.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).  When the sufficiency of the evidence is challenged on

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The final sentencing order erroneously reflects that appellant was found guilty of capital murder of a law enforcement officer, Code § 18.2-31.  Accordingly, this case is remanded to the trial court for the sole purpose of correcting the final order to reflect that appellant was found guilty of attempted capital murder of a law enforcement officer, Code §§ 18.2-25 and 18.2-31.

appeal, this Court must "'examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)).

On August 6, 2013, Isaac Dean saw the defendant riding a horse near Dean's home an hour before dark. Dean had known the defendant for his entire life and had seen the defendant riding the horse in the past. The defendant's appearance was "messed up, swaying side to side," and he was not wearing a shirt.

The defendant rode close to Dean's truck and pointed a gun at Dean through a window of the truck. As Dean sped away, he heard a gunshot. He looked back and saw the defendant firing into the air. Dean went home and called the police. Before they arrived, the defendant rode toward the Dean residence and fired the gun several times. He dismounted, walked to the back door of Dean's house, and stood there for several minutes. Finally, the defendant remounted the horse and rode away waving the gun in the air.

Deputy Jeremy Pultz was the first officer to arrive. He was in uniform and driving a marked vehicle. Pultz saw a shirtless man on horseback near a driveway. The rider galloped rather aggressively toward his vehicle. Pultz saw the rider's face very clearly from a distance of about twenty feet. He identified that man as the defendant.

The defendant rode into a wooded area and stopped in a ravine where Pultz could still see him. Pultz exited his vehicle and announced himself as law enforcement. He asked the defendant to talk with him. The defendant refused to exit the woods, but he and Pultz had a brief verbal exchange. The defendant had slurred speech and "a yelling temperament." The defendant went further into the woods, and Pultz lost visual contact. However, Pultz could hear the horse walking on what sounded like rocks. Pultz returned to his vehicle.

Two investigators arrived at the scene and interviewed Dean at his residence. The investigators had radio contact with Pultz, who remained near the woods. Pultz heard gunshots and walked along the road trying to get a better view. As he did, an investigator radioed, "Pultz, he's coming right at you." Pultz saw someone either running with a horse or riding a horse, "swaying back and forth." The person was "in and out of the vegetation."

Pultz twice announced himself as a law enforcement officer and yelled, "Let me see your hands." He heard the same voice he heard in the ravine holler, "Get out of here," and then he heard shots and felt something hit his thigh. As Pultz backed away, he heard four to five more shots coming from the same area. Pultz described the sound as rocks that "whizzed" "past [his] head up in the trees." Pultz stated it was "kind of just a fluttering sound smacking the leaves" in the tree canopy above his head. The object that struck his leg was a rock or other ricochet from the road.

Investigator Shawn Morris was speaking with the Dean family members near their house when he heard yelling and gunshots. He also heard Pultz identify himself and repeat several times, "Come out with your hands up." After a brief period of silence, Morris heard footsteps and saw a white male wearing no shirt walking toward Pultz. Morris radioed to Pultz, "He's coming at you." Morris then heard gunfire and Pultz say over the radio, "He's shooting."

Investigator Wes Campbell, who was with Morris, also saw a man walk or run and then he heard gunshots. He testified Pultz advised the investigators that he thought the gunman was shooting "in his direction" or "shooting at him." Other witnesses who lived in the area of the Dean residence testified they saw the defendant riding a horse on the date of the incident. They stated he appeared to be unsteady or intoxicated, he possessed a gun, and they heard gunfire. After the incident, the investigators searched for the defendant but did not locate him until the next day.

First, the defendant maintains the evidence was insufficient to prove he was the person who shot at the deputy sheriff. As the defendant concedes, the evidence showed he was in the area, he possessed a gun, and he had the opportunity to commit the offenses. While no witness actually saw the defendant shoot the gun at Pultz, a rational fact finder could find from the evidence presented that the defendant was the shooter.

When a jury has rendered its verdict, "it is not for this court to say that the evidence does or does not establish his guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929). The appellate court asks only whether a reasonable finder of fact could have rejected the defense theories and found the defendant guilty beyond a reasonable doubt. Jordan v. Commonwealth, 273 Va. 639, 646, 643 S.E.2d 166, 170 (2007).

A fact finder is entitled to draw reasonable inferences from proven facts, so long as "all circumstances proved [are] consistent with guilt and inconsistent with innocence and exclude all reasonable conclusions inconsistent with guilt." McMorris v. Commonwealth, 276 Va. 500, 506, 666 S.E.2d 348, 351 (2008). "Merely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence [remains] a matter for the [fact finder] to decide." Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964).

Before law enforcement was even called, the defendant had pointed a gun at Dean's head and fired as Dean drove away. When Pultz first encountered the defendant, the defendant was near the Dean property, he was on horseback, and he wore no shirt. After galloping directly toward Pultz's marked law enforcement vehicle, the defendant rode into nearby woods. Pultz

saw the defendant's face "very clearly." Pultz could still see and hear the defendant as they briefly talked while the defendant was in the ravine.

When the defendant went further into the woods, Pultz could no longer see him, but he could still hear the horse moving in the woods. A short time later, Morris saw a shirtless man approaching Pultz and he alerted Pultz, "He's coming right at you." Pultz saw someone running with a horse or riding a horse in the vegetation. Pultz heard the same voice he heard from the ravine holler, "Get out of here" and then shots fired. A ricochet hit Pultz in the leg.

No evidence suggested that any person other than the defendant was in the area at the time of the shooting. "'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."'" Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)). The "combination of circumstantial evidence [and] direct evidence" produced at trial, Brickhouse v. Commonwealth, 276 Va. 682, 687, 668 S.E.2d 160, 163 (2008), amply supported the jury's finding beyond a reasonable doubt that the defendant fired at Pultz.

Next, the defendant maintains that the evidence was insufficient to prove that he had the specific intent to kill Deputy Pultz. A person "'cannot be guilty of an attempt to commit murder unless he has a specific intent to kill.'" Haywood v. Commonwealth, 20 Va. App. 562, 566, 458 S.E.2d 606, 608 (1995) (quoting Merritt v. Commonwealth, 164 Va. 653, 660, 180 S.E. 395, 398 (1935)). "Specific intent may be shown by circumstances, including by a person's conduct or by his statements. The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991) (citations omitted).

"'The question of [the defendant's] intent must be determined from the outward manifestation of his actions leading to usual and natural results, under the peculiar facts and circumstances disclosed. This determination presents a factual question which lies peculiarly within the province of the jury.'" Hughes v. Commonwealth, 18 Va. App. 510, 519, 446 S.E.2d 451, 457 (1994) (*en banc*) (quoting Ingram v. Commonwealth, 192 Va. 794, 801-02, 66 S.E.2d 846, 849 (1951)).

Pultz arrived at the scene in a marked police vehicle. The defendant aggressively rode the horse toward Pultz's vehicle, and then he went into the woods. Pultz identified himself several times as a law enforcement officer. The defendant did not cooperate and had a "yelling temperament." Just before the shooting began, Pultz heard the defendant yell, "Get out of here."

There were multiple shots fired though Pultz was struck only once. Pultz heard objects whizzing through trees over his head. He felt the defendant was shooting in his direction. The two investigators saw a man walking or running toward Pultz just before the shooting began, negating an inference that the defendant was trying to escape at the time he fired. While the defendant may have fired the gun at Pultz in an effort to get Pultz to leave the area, this intent did not negate his intent to kill Pultz in the process, particularly where he fired the gun numerous times.

The evidence presented permitted the jury to find the defendant was shooting in the direction of Pultz. The jury could infer that the defendant intended the natural consequences of his actions. "It is permissible for the fact finder to have concluded that a person intended the immediate, direct, and necessary consequences of his voluntary acts." Hancock, 12 Va. App. at 783, 407 S.E.2d at 306. A natural consequence of shooting a gun numerous times in the direction of someone is that person's death.

The evidence was sufficient to permit a rational fact finder to conclude that the defendant shot the gun at Deputy Pultz with the intent to kill him.  Accordingly, we affirm.

<u>Affirmed and remanded</u>.