### Richmond

## JAMES CALLOWAY NOBLES, IV v. COMMONWEALTH OF VIRGINIA

November 23, 1977.

Record No. 770466

Present: All the Justices.

*L. Neil Steverson (Joseph F. Spinella; Spinella, Spinella & Owings,* on briefs), for plaintiff in error.

*Linwood T. Wells, Jr., Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

Per Curiam.

Convicted by the trial court, sitting without a jury, of attempted murder, the defendant, James Calloway Nobles, IV, was sentenced to serve eight years in the penitentiary, with four years suspended. On appeal, the defendant's sole contention is that the evidence was insufficient to show that he harbored the specific intent to kill, which is required to sustain a conviction for attempted murder.

The incident in question occurred May 27, 1976. Stated in the light most favorable to the Commonwealth, the evidence shows that the defendant and the victim of the alleged murder attempt, Margaret Ann Lowman, previously had "dated." Their relationship had terminated, however, when, approximately a year before the May 27th incident, he broke into her home. She threatened to report the occurrence to the police "if he ever spoke to [her] again."

In the early morning hours of May 27, 1976, the defendant, accompanied by a friend, John Vadas, drove to Mrs. Lowman's home in the City of Richmond. Finding the front door locked, the defendant used a screwdriver to enter through a side window. He then admitted Vadas by a side door. Because the situation "seemed weird," Vadas immediately left the house to return to the defendant's car.

The defendant proceeded to Mrs. Lowman's bedroom. Awakened by a noise, Mrs. Lowman turned on her bedside lamp and saw "a man's body lying face down on the floor" beside her bed. When she screamed, the man "jumped up," struck her in the face with his fist, and covered her nose and mouth with his hands, "trying to smother [her]." She "could actually feel [her]

eyes starting to pop out," and she "thought [she] was dying," but she "managed to get his fingers off [her] face." Immediately, he covered her face with a pillow. She struggled with him, and they fell to the floor. Holding her face-down on the floor, he tied a pillowcase around her head and then struck her on the head "over and over" with "some blunt object." * In a disguised voice, the defendant told Mrs. Lowman he had come "to rob [her]."

Meanwhile, hearing Mrs. Lowman's screams, Vadas had reentered the house, and he made his way toward the bedroom where the attack was occurring. Apparently alerted to Vadas' approach, the assailant told Mrs. Lowman: "Don't you move. If you move, I will kill you."

When Vadas entered the bedroom and remonstrated with the assailant, the latter "got up off of" Mrs. Lowman and "jerked" the pillowcase from her head. She then recognized the defendant as her attacker.

The three parties went to the kitchen, where Vadas attempted to calm the hysterical victim. In an ensuing conversation, the defendant claimed that he had entered the house only because he wanted to talk to Mrs. Lowman. When Mrs. Lowman picked up the telephone to call her "ex-husband," the defendant and Vadas departed. Mrs. Lowman then went to a local hospital, where she was examined and treated for her injuries.

Later, upon learning he was wanted by the police for the incident involving Mrs. Lowman, the defendant fled to Florida. He was arrested in that state and was returned to Virginia for trial.

Initially, in connection with the May 27, 1976 incident, the defendant was indicted not only for attempted murder but also for breaking and entering with intent to commit murder. Upon the breaking and entering indictment, however, the trial court found the defendant guilty only of trespass. The court held that the evidence had failed to show beyond a reasonable doubt that, at the time he entered the house, the defendant intended to kill Mrs. Lowman. Thus, the crucial question with respect to the attempted murder conviction is whether the evidence supports

* After the attack, Mrs. Lowman found "a candlestick holder . . . laying near the bed." She testified this instrument "could have been" the "blunt object" with which she had been struck.

the trial court's further holding that the defendant formed the intent to kill after he entered the house.

■ To sustain a conviction of attempted murder, the evidence must establish both a specific intent to kill the victim and an overt but ineffectual act committed in furtherance of this criminal purpose. *Hargrave* v. *Commonwealth*, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974). The defendant argues that the evidence in this case was insufficient to establish the first of the required elements, *viz.*, that he intended to kill the victim. His actions, he says, amounted only to an assault upon Mrs. Lowman; he intended merely to "shut her up" and "to hide his identity," without any intent to kill her.

■ The intent which must be shown in a prosecution for attempted murder is "the intent in fact, as distinguished from an intent in law." *Epps* v. *Commonwealth*, 216 Va. 150, 156, 216 S.E.2d 64, 69 (1975). Thus, whether the required intent exists is generally a question for the trier of fact.

Intent in fact is the purpose formed in a person's mind, which may be shown by the circumstances surrounding the offense, including the person's conduct and his statements. *Howard* v. *Commonwealth*, 207 Va. 222, 228, 148 S.E.2d 800, 804 (1966). And a person is presumed to intend the immediate, direct, and necessary consequences of his voluntary act. *Dawkins* v. *Commonwealth*, 186 Va. 55, 62, 41 S.E.2d 500, 504 (1947).

■ Here, the defendant committed at least three specific acts, any one of which, if not thwarted, would have resulted in the immediate, direct, and necessary consequence of Mrs. Lowman's death. He covered her nose and mouth with his hands, "trying to smother [her];" she foiled this attempt by pulling his hands from her face. He covered her face with a pillow; he failed in this attempt because of her struggles. He struck her on the head "over and over" with "some blunt object"; he desisted from this attempt because his friend, Vadas, intervened.

Added to the overt actions of the defendant is his statement to Mrs. Lowman that, if she moved, he would kill her. While this may have been a conditional threat, and while no overt act appears to have occurred after the threat was made, the statement tended to show the state of mind of the defendant, and state of mind is the subject of any inquiry concerning whether an intent to kill exists in an attempted murder case.

*Howard* v. *Commonwealth,* 207 Va. at 228, 148 S.E.2d at 804; *Hardy* v. *Commonwealth,* 110 Va. 910, 919, 67 S.E. 522, 526 (1910).

Considering the conduct and the statement of the defendant, it was for the trier of fact, drawing all reasonable inferences from the evidence, to determine whether, in attacking Mrs. Lowman, the defendant intended to kill her. The evidence was sufficient to support the trial court's conclusion that the requisite intent was present. For this reason, the judgment of conviction will be affirmed.

*Affirmed.*