COURT OF APPEALS OF VIRGINIA

Present:  Judges Coleman, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


ABDUL-MALIK RAMADAN SALAAM

MEMORANDUM OPINION* BY
v.    Record No. 1694-99-2        JUDGE SAM W. COLEMAN III
                                         AUGUST 22, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Thomas N. Nance, Judge

Patricia P. Nagel, Assistant Public Defender
(David Johnson, Public Defender, on brief),
for appellant.

Donald E. Jeffrey, III, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Abdul-Malik Salaam was convicted in a bench trial of

attempted murder of a police officer, in violation of Code

§ 18.2-31(6), and grand larceny, in violation of Code § 18.2-95.

On appeal, Salaam argues that the evidence is insufficient to

support his convictions.  We disagree and affirm the convictions.

BACKGROUND

On January 26, 1999, Robert Ramsey was at a gas station in

Richmond.  At approximately 10:30 p.m., as Ramsey was about to

enter his green Honda Civic, two men approached him.  Holding

_____

* Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Ramsey at knifepoint, the two men demanded the keys to the vehicle. Ramsey surrendered the keys, and the men took the vehicle. Ramsey described the men simply as "two young African-American gentlemen." Ramsey was unable to describe the perpetrators' clothing or remember whether they had facial hair. Ramsey admitted that he had consumed one alcoholic drink before the incident.

Ramsey's vehicle was recovered ten days later. At that time, Ramsey was asked to determine whether he could identify the men who stole the vehicle from a photographic line-up. Although a photo of Salaam was included in the photo spread, Ramsey was unable to identify anyone from the photographic line-up as one of the thieves. However, when Ramsey encountered Salaam in person at the preliminary hearing, he identified Salaam as one of the two men who stole his vehicle. Ramsey stated that although it was dark, the gas station was well lit. He estimated that the incident took less than one minute.

On February 5, 1999, Richmond Police Officers Arthur Rucker and Gerald Brissette were in uniform and on bicycle patrol when they observed two men, Muhammad Fox and Jihae Fox, run out of a store and across the street, pushing people out of the way as they ran down the sidewalk. The officers followed the men, and Rucker apprehended Jihae Fox. Brissette followed Muhammad Fox into an alley, ordering him to stop. There was only one entrance and exit

in the alley.  When Brissette and Muhammad Fox reached the end of the alley, Brissette drew his weapon.  Muhammad Fox got into the passenger side of a green Honda Civic, Ramsey's stolen vehicle, which was backed into the rear of the alley, approximately ten feet away from Brissette.  Brissette testified that, after Muhammad Fox entered the vehicle, the vehicle's engine revved and the vehicle proceeded toward him.  Brissette, who stood between the vehicle and the exit of the alley, moved to his right, attempting to remove himself from the path of the vehicle.  The vehicle turned and proceeded toward Brissette.  The vehicle brushed Brissette's leg, and he fired three shots at the vehicle.  Just prior to hitting Brissette, the vehicle hit a retaining wall in the alley.  Brissette testified that, as the vehicle drove past him, he observed only two individuals in the vehicle.  His view was unobstructed, and he identified Salaam as the driver.

The vehicle proceeded down the alley, and it was pursued by Detective Allen Reid.  Reid continued to pursue the vehicle until it drove through a metal fence and came to a stop at the end of a guardrail.  Reid then observed two individuals run onto Interstate 95.  Reid testified that, from his vantage point, he would have been able to see if a third person had fled the vehicle.  Salaam and Muhammad Fox were quickly apprehended.  Both Reid and Brissette testified that there were only two people in the vehicle.

Jihae Fox and Salaam both testified that Salaam was not living in Virginia at the time Ramsey's vehicle was stolen. Salaam testified that, on the day of the incident, he and his two brothers, Jihae and Muhammad Fox, had just finished doing laundry and were walking home when Salaam's friend, Odie, approached them and asked them if they wanted a ride. Salaam testified that he got into the back seat of the vehicle, behind Odie. The four men drove downtown, and Jihae and Muhammad Fox exited the vehicle and were gone for approximately ten or fifteen minutes. Salaam testified that he was lying down in the back seat when Muhammad Fox returned to the vehicle. Salaam them observed Brissette following Muhammad Fox with his weapon drawn. Salaam stated that the vehicle "pulled out slow" and "started making the turn" when Brissette began shooting. Salaam stated that he "ducked" down in the back seat. When the vehicle finally crashed to a stop, Salaam got up from the back seat and realized that Odie had fled. Salaam and Muhammad then tried to escape, running across the interstate.

## ANALYSIS

"On review of a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, the prevailing party, and grant to it all reasonable inferences fairly deducible therefrom." Robertson v. Commonwealth, 31 Va. App. 814, 820, 525 S.E.2d 640, 643 (2000) (citing Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d

- 4 -

263, 265 (1998). "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict, and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Beck v. Commonwealth, 2 Va. App. 170, 172, 342 S.E.2d 642, 643 (1986) (citations omitted). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted).

### A. Attempted Capital Murder

Salaam argues that the evidence is insufficient to support his conviction for the attempted murder of Officer Brissette. He argues that the Commonwealth failed to prove that he was the driver of the vehicle. Salaam argues that Brissette's testimony, which was the only evidence offered to show that he was the driver of the vehicle, was inherently incredible. Even assuming he was the driver, Salaam argues that the Commonwealth failed to prove that he had the intent to kill Brissette. Rather, he asserts that the driver's intent was merely to flee the scene and avoid apprehension.

Although the incident occurred very quickly and occurred while the vehicle sped past Brissette, brushing up against his leg, and while Brissette was firing three rounds into the

vehicle, Brissette's identification of Salaam was not inherently incredible.  See Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991) (stating that in order to disregard a witness' testimony as a matter of law, the evidence must be inherently incredible or the witness' account of the events must be unworthy of belief).  The trial court was entitled to weigh the evidence concerning the circumstances surrounding the offense in determining Brissette's credibility and Salaam's guilt.  Brissette had an unobstructed view of Salaam as he drove past him in the vehicle.  Brissette positively identified Salaam as the driver and testified that only two people were in the vehicle.  Neither officer saw a third person occupying the vehicle or flee from the vehicle after it crashed, and Salaam was irrefutably an occupant of the vehicle.  The trial judge was entitled to disbelieve Salaam's and Jihae Fox's testimony that Odie was driving and to conclude that Salaam and his brother were lying to conceal Salaam's guilt.  See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (citation omitted).

Next, Salaam, relying on Haywood v. Commonwealth, 20 Va. App. 562, 458 S.E.2d 606 (1995), argues that, even assuming he was the driver, the Commonwealth failed to prove that he intended to kill Brissette.  He asserts that the evidence

"clearly shows" that the driver intended only to flee the scene and avoid apprehension. We disagree.

In Haywood, the defendant, who had been drinking heavily, had a verbal altercation with another boater at a park. The defendant became belligerent, took a baseball bat, and hit the hood of the other person's vehicle with the bat. The defendant then got into his truck and sped off toward the park exit. The victim promptly called the police. Three officers in separate vehicles tried to stop the defendant, who was traveling down the middle of the road at a high rate of speed. Two officers, individually, set up roadblocks by placing their vehicles in the defendant's path. Each time the defendant approached a roadblock, he failed to slow down. The officers had to take evasive action to avoid a collision. The defendant was convicted of two counts of attempted capital murder of a police officer. We reversed the conviction, finding that the Commonwealth's evidence failed to exclude the reasonable hypothesis of innocence, that being the defendant was merely attempting to avoid apprehension. We noted, however, that "[t]here was no evidence that [the defendant] ever swerved or aimed his truck to hit the police cars when they pulled out of his path or that he turned his truck around in an attempt to hit the police cars after passing by them." Id. at 567, 458 S.E.2d at 608-09.

Code § 18.2-31(6) provides that "[t]he willful, deliberate, and premeditated killing of a law-enforcement officer . . . when such killing is for the purpose of interfering with the performance of his official duties" shall constitute capital murder. "'"An attempt to commit a crime is composed of two elements: (1) the intent to commit it; and (2) a direct, ineffectual act done towards its commission."'" Haywood, 20 Va. App. at 565, 458 S.E.2d at 607-08 (citations omitted). "A person cannot be guilty of an attempt to commit murder unless he has a specific intent to kill." Id., 458 S.E.2d at 607 (citing Merritt v. Commonwealth, 164 Va. 653, 661, 180 S.E. 395, 398 (1935)). "Intent is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances. It is a state of mind which may be proved by a person's conduct or by his statements." Barrett v. Commonwealth, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969); see also Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). "[A] person is presumed to intend the immediate, direct, and necessary consequences of his voluntary act." Id. at 551, 238 S.E.2d at 810. "[W]hether the required intent exists is generally a question for the trier of fact." Id. "A motor vehicle, wrongfully used, can be a weapon as deadly as a gun or a knife." Essex v. Commonwealth, 228 Va. 273, 281, 322 S.E.2d 216, 220 (1984).

We hold that the evidence proved that Salaam had the requisite intent to kill Brissette. Here, Brissette testified that after Muhammad Fox entered the vehicle that was waiting for him in the back of the alley, Salaam revved the engine and drove toward Brissette. Brissette saw the tires of the vehicle turn completely in his direction, away from the alley exit. See Moody v. Commonwealth, 28 Va. App. 702, 707, 508 S.E.2d 354, 356-57 (1998) (finding that, although defendant warned the victim to move out of the way, the defendant formed the specific intent to run over the victim had he not moved out of he way). Moreover, the defendant's assertion that he only struck Brissette with his vehicle while attempting to escape is belied by the evidence that Salaam could have driven from the scene without steering toward Brissette or without hitting the retaining wall. The evidence proved that the vehicle was only 63 inches wide while the mouth of the alley was more than 300 inches wide. From this evidence, the fact finder could infer that Salaam intended to kill Brissette.

## B. Grand Larceny

Salaam argues that the evidence is insufficient to support his conviction for grand larceny because the victim's identification of him was unreliable. He asserts that Ramsey was able to identify him as the perpetrator only after seeing him in the "suggestive setting" of the preliminary hearing.

- 9 -

Although Salaam does not contest the admissibility of Ramsey's identification, the factors set forth in Neil v. Biggers, 409 U.S. 188 (1972), are relevant in determining whether the identification evidence is sufficient, standing alone or in combination with other evidence, to prove beyond a reasonable doubt that Salaam was one of the two people who stole Ramsey's vehicle. See Smallwood v. Commonwealth, 14 Va. App. 527, 530, 418 S.E.2d 567, 568 (1992) (applying the Neil v. Biggers analysis even though the accused did not appeal the trial court's denial of his motion to suppress the identification); see also Currie v. Commonwealth, 30 Va. App. 58, 73, 515 S.E.2d 335, 343 (1999) (stating that the factors enunciated in Biggers are "significant circumstances that may be considered along with other evidence"). These factors include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Id. at 199-200.

Here, the evidence established that the theft of Ramsey's vehicle occurred in an area that was well lit and that Ramsey had a good opportunity to view the two assailants. Although Ramsey was unable to identify Salaam "for sure" from the photographic line-up, Ramsey unequivocally identified Salaam after seeing the

defendant in person for the first time. Ramsey's identification of Salaam occurred only after seeing him at the preliminary hearing; however, Ramsey attributed his ability to identify Salaam to the "differences in seeing someone in person and seeing photographs." See Thomas v. Commonwealth, 16 Va. App. 851, 859, 434 S.E.2d 319, 324-25 (1993) (holding that the fact that the defendant was handcuffed during the showup and wearing "jail garb" at the preliminary hearing did not invalidate the identifications), aff'd en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994). Although Salaam intimates that Ramsey may have been intoxicated because he conceded that he had a drink just prior to the incident, there is no evidence to suggest that Ramsey was intoxicated or that his judgment was impaired. Most importantly, Salaam was observed driving Ramsey's vehicle ten days after the theft. Unexplained or unsatisfactorily explained possession of recently stolen property supports a reasonable inference that the person in possession is the thief. See Bright v. Commonwealth, 4 Va. App. 248, 251, 356 S.E.2d 443, 444 (1987) (holding that "the unexplained possession of recently stolen goods permits an inference of larceny by the possessor"). Further, although Salaam testified that he was living in New Jersey at the time of the incident and that he did not return to Richmond until eight days after the incident, the fact finder was entitled to reject Salaam's self-serving testimony and conclude that he was lying to

- 11 -

conceal his guilt.  Accordingly, we find the evidence is sufficient to prove beyond a reasonable doubt that Salaam was the perpetrator of the crime.

Accordingly, we find the evidence sufficient to affirm the convictions.

<u>Affirmed.</u>