COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Humphreys and Petty
Argued at Richmond, Virginia


SAMUEL AARON BRABSON

                                            MEMORANDUM OPINION[*] BY
v.        Record No. 2498-08-2             JUDGE WILLIAM G. PETTY
                                               MARCH 2, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Daniel T. Balfour, Judge

John B. Russell, Jr. (DurretteBradshaw, PLC, on brief), for
appellant.

Alice T. Armstrong, Assistant Attorney General II (William C.
Mims, Attorney General, on brief), for appellee.


Following a bench trial, Samuel Aaron Brabson was convicted of one count of larceny by

false pretenses and one count of attempted larceny by false pretenses, in violation of Code

§§ 18.2-178 and -26.  Brabson now appeals those convictions, arguing that the evidence

presented in the trial court was insufficient to prove his guilt.  We disagree with Brabson, and

affirm his convictions.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of these narrow

questions presented on appeal.  We view those facts and incidents in the "light most favorable"

to the Commonwealth, as the prevailing party below, Finney v. Commonwealth, 277 Va. 83, 87,

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

671 S.E.2d 169, 172 (2009), and we grant to it all fair inferences flowing therefrom, Huffman v. Commonwealth, 51 Va. App. 469, 470, 658 S.E.2d 713, 713 (2008).

In 2005, Brabson was involved in a minor traffic accident, which he claimed aggravated a pre-existing spinal injury and left him unable to walk. Following the accident, Brabson filed an insurance claim with his automobile insurance carrier, Amica Mutual Insurance Company, and sought and received various benefits from the Virginia Department of Rehabilitative Services (DRS). After an insurance company employee performed a routine "activity check" on Brabson, the company became suspicious and hired a private investigator to observe Brabson and determine whether he was truly paralyzed. Following an extensive investigation, Brabson was indicted and tried for one count of larceny by false pretenses and one count of attempted larceny by false pretenses. The evidence presented at trial established that Brabson was not only capable of performing routine household chores, but also that he engaged in more strenuous activities such as mountain hiking and dancing. Brabson was convicted, and this appeal followed.

II.

A. Larceny By False Pretenses

Brabson challenges his conviction for larceny by false pretenses on the grounds that he "never obtained title to any of the property or services he received from the Department of Rehabilitative Services."

In order to convict an individual for larceny by false pretenses in violation of Code § 18.2-178, the Commonwealth must prove "'(1) an intent to defraud; (2) an actual fraud; (3) use of false pretenses for the purpose of perpetrating the fraud; and (4) accomplishment of the fraud by means of the false pretenses.'" Reigert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 808 (1977) (quoting Bourgeois v. Commonwealth, 217 Va. 268, 272, 227 S.E.2d 714, 717 (1976)). In addition, the Commonwealth must prove that the defendant obtained not only

- 2 -

possession of, but title to the property. Cunningham v. Commonwealth, 219 Va. 399, 402, 247 S.E.2d 683, 685 (1978). "The gravamen of the offense . . . is the obtainment of ownership of property, by false representations or pretenses." Quidley v. Commonwealth, 221 Va. 963, 965, 275 S.E.2d 622, 624 (1981) (citing R. Perkins, Criminal Law 306 (2d ed. 1969)).

Thus, Brabson's interpretation of the law is correct: the Commonwealth was required to prove that he obtained not just possession, but actual ownership, of the property that he stole by false pretenses. The indictment alleged the theft of three separate and distinct items—a computer and accompanying software, rehabilitative services from a physical therapist, and a wheelchair. Brabson argues that because the computer and computer software were only lent to him by DRS, he never obtained title to those items. In addition, he argues that he never received title to the payments for the rehabilitative services. However, Brabson conceded both at trial during closing argument and on brief that he received title to the wheelchair. The theft of this item alone is sufficient to support the allegations contained in the indictment. Thus, the evidence is sufficient to support Brabson's conviction for one count of larceny by false pretenses.[1]

### B. Attempted Larceny by False Pretenses

Brabson also argues that the evidence at trial was insufficient to support his conviction of attempted larceny by false pretenses because "[t]he representations that [he] made to a third party, which were indirectly relayed to his attorney and incorporated into an insurance settlement demand without his knowledge do not constitute an attempt to commit larceny by false pretenses." As explained below, we disagree.

---

[1] Brabson's question presented only raises the issue of the sufficiency of the evidence to prove that he received title to any of the property or services he received. On brief and at oral argument, Brabson argues that, because DRS was the "middle-man" in the wheelchair purchase, he did not receive title to the wheelchair *from DRS*, and, therefore, the Commonwealth did not prove that he committed larceny by false pretenses from DRS as alleged in the indictment. Because this argument raises a different legal issue from that encompassed in the question presented on appeal, we will not address it. See Rule 5A:12(c).

In order to convict an accused of attempted larceny by false pretenses, the Commonwealth must prove two elements: first, that the defendant had the specific intent to commit larceny by false pretenses, and second, that the defendant committed a direct, but ineffectual, act towards accomplishing the crime. Sizemore v. Commonwealth, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978).

At the trial below, the Commonwealth established that Brabson hired an attorney and sued his automobile insurance company, Amica, for one million dollars under the uninsured motorist coverage of his policy for the injury he claimed to have suffered in the 2005 car accident. In order to establish the extent of Brabson's injuries, and thus the amount of damages to which he was entitled, his attorney made several appointments for Brabson to be evaluated by rehabilitation and vocational experts. Brabson underwent a Physical Work Performance Evaluation (PWPE) administered by Kathy Dollins, a vocational expert. The counselor, Robert Jackson, prepared a report based on his evaluation of Brabson, his review of Brabson's medical records, and his assessment of Brabson's work qualifications. Jackson opined that Brabson could only work part-time with significant accommodations since the 2005 accident and that he could expect to lose 50% of his earning capacity over his lifetime as a result. Brabson's attorney sent a demand letter to Amica, in which he relied on Jackson's report.

At trial, Jackson testified that during the evaluation, Brabson remained in his wheelchair and indicated to Jackson that he was wheelchair bound. Brabson told Jackson that "[h]e was able to get up on a walker, but he indicated that it was essentially for stretching, but [he] was not functional with a walker." Jackson did not physically examine Brabson; instead, Jackson discussed "functionality, what he could do and what he couldn't do" with Brabson. Jackson testified that Brabson stated he "was able to sit for about an hour at a time, two hours maximum. . . . He must lay down and put heat and ice on his back . . . and do massage and stretching

techniques . . . after short activities." Brabson never told Jackson that he was actually able to walk, hike, and dance during the relevant time. Jackson testified that, had he known Brabson's actual abilities, it would have "absolutely" changed his opinion as to Brabson's ability to work.

Brabson argues that there was insufficient evidence to prove he had the requisite specific intent to commit larceny against Amica by false pretenses because, he contends, the Commonwealth did not prove that he "had specific knowledge of how any specific action or statement by him was to be used, there can be no proof, even circumstantial, of a specific intent by Brabson, at the time, to commit larceny by false pretenses against Amica." Appellant's Br. at 21-22.

"Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case." Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979). The Commonwealth may prove intent "by the circumstances, including a person's conduct and statements." Robertson v. Commonwealth, 31 Va. App. 814, 820, 525 S.E.2d 640, 643 (2000) (citing Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977)). Further, "'[t]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts.'" Id. (quoting Bell v. Commonwealth, 11 Va. App. 530, 533, 399 S.E.2d 450, 452 (1991)). Finally, "inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991).

Here, the evidence in the trial court proved that Brabson lied about the extent of his injuries and his abilities to both his doctors and to Jackson, who performed his vocational assessment. The evidence also established that Brabson hired an attorney and sued his insurance company, seeking benefits under his policy. The trial court, sitting in this case as the trier of facts, could infer from this evidence that Brabson fully intended his attorney to zealously pursue

his lawsuit like any other and that Brabson intended his misrepresentations to his physicians and to Jackson to convince his insurance company that he was no longer able to work, which would increase the amount of money he would receive from them. Thus, the evidence was sufficient to show that Brabson had the requisite specific intent to obtain money to which he was not entitled.

Brabson also argues that the evidence does not establish the second element of attempted larceny by false pretenses: that he made a direct, albeit ineffectual, act in furtherance of the crime. Brabson contends that "the Commonwealth's best case is that Brabson misrepresented his condition to Ms. Dolling who, in turn, passed it along to Dr. Murphy [one of Brabson's physicians], who, in turn, passed it along to Robert Jackson, [Brabson's attorney's] rehabilitation expert, who prepared a report to [the attorney], who incorporated it as part of a settlement demand to Amica." Thus, Brabson argues, his act was too attenuated from the misrepresentation to Amica to fulfill the direct act element of attempted larceny by false pretenses.

However, "'[t]he attempt contemplated by the statute must be manifested by acts which would end in the consummation of the particular offence, but for the intervention of circumstances independent of the will of the party.'" Hicks v. Commonwealth, 86 Va. 223, 228, 9 S.E. 1024, 1026 (1889) (quoting People v. Murray, 14 Cal. 159, 160 (1859)). Moreover, "[t]he victim of the fraudulent scheme need not be the person to whom the false pretense or misrepresentation is made." Mosteller v. Commonwealth, 222 Va. 143, 148, 279 S.E.2d 380, 382 (1981).

There, the appellant, who was a sales representative for a furniture manufacturer, provided false information that was used to provide state-owned institutions with inflated bids for furniture. Id. at 146-47, 279 S.E.2d at 381. When the Commonwealth's Department of Purchases and Supplies eventually approved a bid and paid the vendors, the appellant pocketed the difference between the true value of the furniture and the inflated figures he provided to the

bidding vendors. Id. Thus, while Mosteller made false representations to the vendors regarding the cost of the furniture and "fictitious ancillary services" that he never provided, he ultimately defrauded the Commonwealth. Id. at 147, 279 S.E.2d at 381.

Similarly, the appellant in Quidley, 221 Va. at 693, 275 S.E.2d at 622, used a falsified purchase order from the Norfolk Social Service Bureau to buy clothing at J.C. Penney Company. Id. at 964, 275 S.E.2d at 624. Penney's did, in fact, receive payment from the Bureau, and the appellant challenged her conviction on the grounds that the indictment, which indicated that Penney's had been the victim of the larceny by false pretenses, was at fatal variance with the proof adduced at trial. Id. at 965, 275 S.E.2d at 624. Our Supreme Court rejected that argument, and held that the crime of false pretenses is "complete when the fraud intended is consummated by obtaining the property sought by means of the false representations . . . . [I]t is sufficient if the fraud of the accused has put the victim in such a position that he may eventually suffer loss." Id. at 965, 275 S.E.2d at 625 (citations omitted).

The evidence in this case established that Brabson consistently made false representations regarding his disability and work capacity to whomever he needed to in order to gain financially. These misrepresentations included those made to the experts employed by his attorney to further his lawsuit. Accordingly, the trial court had adequate evidence to determine that Brabson had made a direct act in furtherance of the crime of larceny by false pretences.

III.

For the foregoing reasons, Brabson's convictions are affirmed.

Affirmed.