COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Malveaux and Chaney
Argued at Lexington, Virginia


DANNY EUGENE HEARN, JR.

v.      Record No. 1524-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE VERNIDA R. CHANEY
JULY 23, 2024


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
W. Chapman Goodwin, Judge

Kelsey Bulger, Senior Appellate Attorney (Virginia Indigent Defense
Commission, on briefs), for appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Danny Eugene Hearn, Jr. of violation of a protective order by stalking and

attempted first-degree murder. Code §§ 18.2-60.4(C), -26, -32.[1] On appeal, Hearn asserts that the

evidence was insufficient to prove he had notice of a protective order and that he intended to kill

the victim. For the following reasons, this Court disagrees and affirms the convictions.

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.*

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Hearn was indicted for attempted aggravated murder, arson of an occupied dwelling,
and violation of a protective order by stalking. The jury convicted Hearn of the lesser-included
offense of attempted first-degree murder and acquitted him of arson of an occupied dwelling.
The sentencing order incorrectly lists a conviction for first-degree murder. We remand the
matter to the trial court for the sole purpose of correcting this clerical error. *See* Code
§ 8.01-428(B).

*Hudson*, 265 Va. 505, 514 (2003)). Thus, we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

In the fall of 2020, Hearn and the victim, Jennifer Spiggle, began a romantic relationship. Shortly after, Spiggle moved her camper to Hearn's backyard of his rented home at 45 Greenbriar Lane. Spiggle mainly lived in her camper, but she would also stay in the house with Hearn. Hearn, in turn, would stay in the camper with Spiggle. After several months living together, Hearn began to threaten Spiggle and monitor her activity at home.

On March 1, 2021, Hearn assaulted Spiggle and he was arrested for assault and battery. On March 15, 2021, Spiggle obtained a one-year protective order against Hearn. The protective order prohibited Hearn from engaging in acts of family abuse against Spiggle. Further, the order directed Hearn to "have no contact of any kind with" Spiggle and to vacate 45 Greenbriar Lane until April 1, 2021. The order was in effect until March 15, 2022.

At trial, Hearn's daughter, Caitlyn, who also lived at 45 Greenbriar Lane, testified that she was aware Spiggle had obtained a protective order against Hearn. After the protective order was issued, Hearn moved in with his mother, who lived across the street. Caitlyn caught Hearn sneaking around the house and sleeping in different areas, including Spiggle's camper. Once, Caitlyn overheard Hearn talking to Spiggle at the camper. Caitlyn noted that Hearn often threatened Spiggle's life if she did not leave the property.

Clay Frazier was at 45 Greenbriar Lane to renovate the home and facilitate Hearn and Spiggle's departure from the property. When Spiggle helped Frazier clean the house, Hearn would stand in his mother's yard across the street and angrily yell at Frazier and Spiggle.

Frazier admitted that he knew Hearn was unhappy he was there with Spiggle and he would often antagonize Hearn. When Hearn would not move his items from the property, Frazier burned them in front of Hearn. Once, Frazier kissed Spiggle while within Hearn's sight. Hearn became upset, and Frazier taunted Hearn to enter the property to fight. Hearn replied, "I got a two-week protective order on me. I can't come to the house."

On April 19, 2021, Spiggle saw that Hearn was watching her while he sat on his mother's front porch. Hearn called Spiggle while she was riding to the store with Frazier. Spiggle answered the call and put Hearn on speakerphone so Frazier could hear the conversation. Spiggle testified that Hearn made "many statements. Most of them [were] about [her] life. Live or die, [her] choice. [She] could make it all stop. [Hearn] could make it all go away." Spiggle noted that "[t]here were many ugly hateful things that were said." Frazier recounted that Hearn stated, "[y]ou're not going to be with anybody, live or die."

When they returned to 45 Greenbriar Lane, Frazier stayed with Spiggle for several hours. Then Spiggle went to her camper and fell asleep on her couch. Her "bedroom [was] in the very front [of the camper] where the fifth wheel connection [was]," and her living room and dining area were in the center of the camper. In the early morning, Spiggle was suddenly awakened by her service animals jumping on and licking her. Spiggle observed flames reaching over the top of her window and engulfing the camper's entrance. The camper door was locked from the outside. She escaped with her dogs through the camper's emergency window. Spiggle tried to put out the fire with the hose and called 911.

When Corporal Matthew Vincent of the Augusta County Sheriff's Office approached the camper, the fire was very small and "[m]ost of it had burned down." Several items were stacked under a blue tarp, held in place by a small fence. He noted that "[m]ost of the fire was outside of

the little fence on the ground and was put out with a garden hose" that Spiggle retrieved from the house. Near the camper, the tarp and several items underneath appeared to be melting.

Once the fire was extinguished, Spiggle informed Corporal Vincent that she believed Hearn was responsible and that he could be found at his mother's house across the street at 56 Greenbriar Lane. Corporal Vincent noticed that Hearn's mother's house had security cameras pointing toward the road and reviewed the surveillance camera footage. The surveillance footage portrayed a male walking across Greenbriar Lane from the direction of 45 Greenbriar Lane. The male wore a pullover, pants, and a baseball hat, and appeared to be carrying a spray bottle in his hand. Once the male reached 56 Greenbriar Lane's porch he lit a cigarette and smoked it while facing Greenbriar Lane. Suddenly, an active glow illuminated the sky behind 45 Greenbriar Lane.

After viewing the videos, Corporal Vincent questioned Hearn, whom other deputies had detained. Hearn was wearing a fleece pullover and blue jeans, attire that was consistent with that of the male in the surveillance video. During the interview, Hearn acknowledged that he was the subject of a protective order and Spiggle was the protected person. When asked about the fire at the home across the street, Hearn denied knowing anything about it. Once confronted with the video footage, however, Hearn admitted that he went to the camper and used a spray bottle of gasoline to ignite the fire on the ground at the front of the camper. Hearn stated that he "was trying to scare [Spiggle]."

Agent Chad Birkhead, a Virginia State Police arson expert, investigated the fire. Agent Birkhead noticed a "dark spot under the tongue [of the camper] where it had looked like the ground had burned" and "some scorching" on the blocks supporting the camper. He observed that "the fire [had] eat[en] away the outside plastic [on the camper]." There was no damage to the interior of the camper.

- 4 -

Agent Birkhead concluded the fire was "incendiary." Agent Birkhead testified that there were "two possible points of origin": (1) by the "stack of goods" where "there was a lot of melting from the blue tarp" and (2) the dark spot "straight up underneath the trailer."

The jury convicted Hearn of violating a protective order by stalking and attempted first-degree murder. Hearn appeals.

ANALYSIS

In challenging the trial court's denial of his motion to strike the charges of violating a protective order by stalking and attempted first-degree murder,[2] Hearn necessarily asserts that the trial court should not have permitted the jury to consider the charges because "[a] motion to strike challenges whether the evidence is sufficient to submit the case to the jury." *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013)). As a result, his challenge raises the questions of whether the evidence adduced sufficiently presented "a *prima facie* case [of violating a protective order by stalking and attempted first-degree murder] for consideration by the" jury. *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 657 (2015)).

"What the elements of the offense are is a question of law that we review de novo." *Linnon*, 287 Va. at 98. "Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." *Id.* "In reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom." *Id.* "After so viewing the evidence, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* "In sum, if there is

_____

[2] Hearn was initially charged with attempted aggravated murder, based on the notion that Hearn intended to kill Spiggle to prevent her from testifying. The jury instead convicted him of the lesser-included offense, attempted first-degree murder.

evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial." *Id.*

## I. Violation of Protective Order

Hearn asserts that he did not have actual notice of the protective order. He emphasizes that the trial court found that he was not served with the protective order and that he was not present at the hearing when the protective order was issued. Although Hearn told Frazier that he had a two-week protective order, Hearn claims that he was "referring to [a] preliminary protective order, which is not the order he is accused of violating." Since he was unaware of the terms of the permanent protective order, Hearn asserts, the trial court erred when it denied his motion to strike this charge.

A conviction for violating a court order requires prior notice of that order. *See Hsiu Tsai v. Commonwealth*, 51 Va. App. 649, 655-56 (2008) (reversing conviction for violating a protective order where the defendant received no "notice of any kind" of the order).

Hearn made admissions as to his knowledge of a protective order that cannot be ignored. First, when Frazier provoked Hearn and encouraged him to come to 45 Greenbriar Lane, Hearn stated, "I got a two-week protective order on me. I can't come to the house." Next, upon his arrest, Hearn acknowledged that he was subject to a protective order and that Spiggle was the protected person.

Although Hearn argues that the evidence only shows that he was subject to a *temporary*, two-week protective order, no such order is in evidence. Besides which, the incidents in this case occurred on April 20 to 21, 2021, two weeks *after* the March 15, 2021 order would have expired had it been a preliminary, two-week protective order rather than a protective order valid for one year. While the circuit court acknowledged that Hearn failed to appear at the protective order

- 6 -

hearing where the order was issued and thus did not receive formal notice of the order at the hearing, and agreed that Hearn "was not served" with the order, it did find that he had *actual* knowledge of the order's contents. The trial court determined that "the evidence conclusively show[ed] that [Hearn] was aware of the terms of the protective order" and "that the protective order was in place."[3] Based on the record before us, including Hearn's admissions, the trial court was not plainly wrong in concluding beyond a reasonable doubt that Hearn had actual notice of the protective order. Therefore, the trial court did not err in denying Hearn's motion to strike.

## II. Attempted First-Degree Murder

Hearn further asserts that the evidence failed to prove he intended to kill Spiggle. He claims that although he used the refrain "live or die" often, he never made a specific threat against Spiggle. Hearn admits that he set the fire under Spiggle's camper but asserts that he was only trying to frighten her, as he told the police. He explains that the fire was set on the ground using a small amount of fuel, allowing Spiggle to escape through a window. Additionally, the fire did not damage the inside of the camper or the nearby home and was nearly extinguished before the police arrived. This conduct, he asserts, was consistent with an intent to scare rather than an intent to kill Spiggle.[4]

---

[3] At trial, the Commonwealth introduced into evidence, without objection, the arrest warrant from March 1, 2021, the March 15, 2021 protective order, and the return of service form. On the return of service form, neither the "personal service" nor the "not found" box was ticked for Hearn. In contrast, the return of service form indicated that Spiggle was personally served the protective order.

[4] The Commonwealth contends, "Hearn argued that he did not intend to kill Spiggle for the purpose of interfering with her duty as a witness, but he did not preserve any argument that he lacked a specific intent to kill Spiggle." Our colleague likewise contends in concurrence that Hearn "argued only that the Commonwealth had failed to prove his attempt was against a witness who had been subpoenaed for court proceedings 'for the purpose of interfering with the person's duties' as a witness." *Infra* at 11. The record shows, however, that Hearn's motion to strike the attempted murder for-the-purposes-of-interference charge *also* challenged the sufficiency of intent to commit an attempted first-degree murder charge:

- 7 -

Hearn continues that the evidence is insufficient to support a finding of specific intent to commit murder. He specifically asserts that his "words and conduct do not support a finding of a specific intent to kill Spiggle," but instead "suggest that he was trying to frighten her."

"Whether the intent required for attempted murder exists 'is generally a question for the trier of fact.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (quoting *Nobles v. Commonwealth*, 218 Va. 548, 551 (1977)). Such factual determinations are "accorded great deference on appeal and will not be reversed unless clearly erroneous." *Towler v. Commonwealth*, 59 Va. App. 284, 297 (2011). "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Abdo v. Commonwealth*, 64 Va. App. 468, 475 (2015) (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)). Indeed, "[i]ntent in fact is the

---

> So for that reason, with those two elements not satisfied, but mostly would ask for *attempted first-degree murder* and then *the following lesser included.* Your Honor, since they have not established both key elements, [we're] asking the Court to strike that as well.

(Emphases added). Then the circuit court ruled directly on the evidence of Hearn's intent to kill by stating, "I also believe that the other evidence which was submitted as to the fact that a fire was built underneath what would be the sleeping area of that camper *is sufficient to show evidence that is intent to kill*." (Emphasis added).

In this case, the evidence of an intent to kill and the intent to kill for a specific purpose were closely linked, and the Commonwealth bore the burden to prove both. This stands in marked contrast to the situation in *Moison v. Commonwealth*, 302 Va. 417, 420 (2023), where Moison argued on appeal that the circuit court improperly excluded *impeachment* evidence, when the argument at the circuit court was whether the evidence needed to be disclosed as *alibi* evidence. Unlike here, the courts in *Moison* dealt with arguments over two different categories of evidence: impeachment versus alibi. Here, this Court is confronted with two levels of the same kind of evidence: general intent and specific intent. As the contemporaneous objection rule required, the trial court in our case was able "to rule intelligently on" the issue of intent. *Maxwell v. Commonwealth*, 287 Va. 258, 264-65 (2014).

Accordingly, this Court finds that Hearn's assignment of error with respect to the sufficiency of the evidence for his attempted first-degree murder conviction is not waived under Rule 5A:18, and the issue is properly before us. Because we find this argument sufficiently preserved, this Court does not address Hearn's argument that we should consider the matter under the ends-of-justice exception to Rule 5A:18.

purpose formed in a person's mind and may be, and frequently is, shown by circumstances. It is a state of mind which may be shown by a person's conduct or by his statements." *Id.* (quoting *Vincent v. Commonwealth*, 276 Va. 648, 652 (2008)).

"[I]t is permissible for the fact finder to infer that every person intends the natural, probable consequences of his or her actions." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (citation omitted). On this evidence, the jury was permitted to conclude that the natural and probable consequences of Hearn's actions could well have killed Spiggle. The jury was entitled to consider Hearn's repeated threatening statements towards Spiggle, including "live or die," barricading and locking her inside the camper, setting fire in the early morning hours directly under Spiggle's sleeping quarters, retreating back home without monitoring the fire, and forcing Spiggle to escape through an emergency window.

The jury was also entitled to reject Hearn's argument that he meant only to scare Spiggle. *See, e.g.*, *Secret*, 296 Va. at 230-31 (the jury was justified in rejecting the argument that the defendant set a fire out of "general malevolence" and not an intent to kill because "Secret had full knowledge that [the residence] was . . . occupied by several individuals at the time he set the fire"). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009). This Court gives "deference to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." *Id.*

Based on the evidence, it was entirely rational for the jury to find that Hearn had the specific intent to kill Spiggle. Thus, the circuit court did not err in denying Hearn's motion to strike the attempted murder charge.

CONCLUSION

The evidence was sufficient to convict Hearn of violating a protective order by stalking and attempted first-degree murder. We note, however, that the final order incorrectly states that Hearn was convicted for first-degree murder in violation of Code § 18.2-32 when in fact he was convicted of attempted first-degree murder. Accordingly, this Court affirms the trial court's decision, but remands the case to correct a clerical error in the sentencing order.

*Affirmed and remanded.*

Malveaux, J., concurring.

I join my colleagues in holding that the evidence was sufficient to convict Hearn of violating a protective order by stalking, and in remanding this case for the trial court to correct a clerical error in its sentencing order. I also would affirm Hearn's conviction for attempted first-degree murder. Respectfully, however, I would not reach the merits of Hearn's argument that the evidence "was insufficient to prove [his] specific intent to kill the victim," because that argument was not preserved for appellate review.

In Hearn's motion to strike the relevant charge at trial,[5] he argued only that the Commonwealth had failed to prove his attempt was against a witness who had been subpoenaed for court proceedings "for the purpose of interfering with the person's duties" as a witness, as required by Code § 18.2-31(A)(15). Hearn first challenged the sufficiency of the evidence that Spiggle had been "under subpoena," before further arguing that the Commonwealth had

> not proven or shown any evidence to indicate that [he] allegedly attempted to kill Ms. Spiggle for the purpose of interfering with her duty as a witness. They can't just show attempt to kill, they have to show intent to kill for that specific purpose. The only evidence they have as far as intent to kill is these alleged statements, live or die, is your choice. Those statements were repeated multiple times. We don't really know what -- that statement is all they have as far as intent.
>    There is no statement that says something like if you testify, I'm going to kill you. If you don't say that -- I'm going to kill you. That is what you expect to see from an aggravated murder charge. They don't have anything like that. Not only is there no proof that the witness was under subpoena, there is no proof, even in the evidence most favorable to the Commonwealth that [he] had any intent to kill for that purpose. So for that reason, with those two elements not satisfied . . . . Your Honor, since they

---

[5] I note that Hearn was indicted for attempted aggravated murder, in violation of Code §§ 18.2-25 and -31(A)(15), for attempting the "willful, deliberate, and premeditated killing of a[] witness in a criminal case after a subpoena has been issued for such witness . . . , when the killing is for the purpose of interfering with the person's duties in such case." Code § 18.2-31(A)(15). Hearn still faced that charge at the time he moved to strike the evidence, although the jury ultimately convicted him of the lesser-included offense of attempted first-degree murder, in violation of Code §§ 18.2-26 and -32.

have not established both key elements, [we're] asking the Court to strike that as well.

When the trial court ruled on the issue, it stated that

> with regard to the aggravated murder. I'm going to overrule that motion. The intent is for him to interfere with the witnesses' [sic] duties. In his testimony and his questioning to the deputies, he said that his purpose was to scare her. I also believe that the other evidence which was submitted as to the fact that a fire was built underneath what would be the sleeping area of that camper is sufficient to show evidence that is intent to kill. Ultimately killing somebody is the best way to keep them from testifying in a hearing. So I do find that the Commonwealth has proven the evidence sufficient to go forward. So I am overruling the motion.

It is clear from this record that in his motion to strike, Hearn did not make an argument that the evidence failed to prove his general intent to kill.[6] Rather, he argued that the evidence failed to prove his specific intent to kill Spiggle for the purpose set out in subsection (A)(15) of the aggravated murder statute, Code § 18.2-31. Yet on brief, Hearn advances a general intent argument, contending that his "conduct and actions were consistent with an intent to scare Spiggle, not to kill her."

"Pursuant to the contemporaneous objection requirement of Rule 5A:18, this Court will not consider an argument on appeal that was not presented to the trial court." *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 329 (2021). "Additionally, the *precise* nature of the objection must be clear because '[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review.'" *Id.* at 329-30 (alterations in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)). "This Rule 'afford[s] the trial judge an opportunity to rule intelligently on objections.'" *Moison v. Commonwealth*, 302

---

[6] Likewise, it is clear that the trial court ruled on the issue of Hearn's intent to kill only in the context of Hearn's "intent . . . to interfere with [Spiggle's] duties" as a witness, per Code § 18.2-31(A)(15), noting that "killing somebody is the best way to keep them from testifying in a hearing."

Va. 417, 419 (2023) (alteration in original) (quoting *Maxwell v. Commonwealth*, 287 Va. 258, 264-65 (2014)).  To effectuate the rule, "[w]hen making an objection, 'the parties must inform the [trial] court of the precise points of objection in the minds of counsel,'" so that the trial court will be "'in a position . . . to consider the asserted error [and] rectify the effect of the asserted error.'"  *Id.* (second and subsequent alterations in original) (quoting *Maxwell*, 287 Va. at 265).

Applying the requirements of Rule 5A:18, I would conclude that Hearn failed to preserve his argument on brief for appellate review because he did not make that argument to the trial court.  Indeed, Hearn acknowledges the discrepancy between his argument to the trial court below and his argument before this Court, invoking the "ends of justice" exception to Rule 5A:18 and contending that "this Court should apply the ends of justice exception to address the merits" of his argument on brief.  But "'[t]he ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred."  *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)).  Moreover, it is an appellant's burden to "affirmatively show that a miscarriage of justice has occurred, not that a miscarriage of justice *might* have occurred."  *Holman v. Commonwealth*, 77 Va. App. 283, 299 (2023) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 683 (2022)).  To show such a miscarriage of justice, "the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must *affirmatively* prove that an element of the offense did not occur."  *Id.* (quoting *Holt*, 66 Va. App. at 210).  Hearn offers no evidence that he was "convicted for conduct that was not a criminal offense," or to "*affirmatively* prove that [the intent] element of [attempted first-degree murder] did not occur."  *Id.* (quoting *Holt*, 66 Va. App. at 210).  In fact, for the reasons discussed by my colleagues above, the record amply supports appellant's conviction for attempted first-degree murder.  I would therefore hold that the ends of justice exception to Rule

5A:18 does not apply here and that the merits of Hearn's second assignment of error were not otherwise preserved.