COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and Causey
Argued by videoconference


DAMONTA MARTIN, S/K/A
  DAMONTE MARTIN

                                                    MEMORANDUM OPINION* BY
v.      Record No. 0128-23-4                        JUDGE GLEN A. HUFF
                                                    DECEMBER 28, 2023

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                              James C. Clark, Judge

            Farheena Siddiqui (Law Office of Samuel C. Moore, PLLC; Moore,
            Christoff & Siddiqui, on briefs), for appellant.

            Francis A. Frio, Senior Assistant Attorney General (Jason S.
            Miyares, Attorney General, on brief), for appellee.


        Following a jury trial, the trial court convicted Damonta Martin ("appellant") of malicious

wounding, using a firearm in the commission of a felony, and maliciously shooting at an occupied

vehicle. The trial court sentenced appellant to 28 years of imprisonment with all but 8 years

suspended. In challenging his convictions for malicious wounding and maliciously shooting at an

occupied vehicle, appellant argues that the evidence was insufficient to prove he acted with malice

because the evidence supported his claim of self-defense. Finding no error, this Court affirms the

trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On the afternoon of January 9, 2022, Ruth Buba was talking on her cell phone while sitting inside her car in the parking lot of a 7-Eleven store in Alexandria, Virginia. Her car was parked almost directly in front of the double doors of the store's entrance. After hearing gunshots, Buba saw that her car window was shattered, noticed that there was blood in the car, and realized she had been shot. As the gunfire continued from the right side of the parking lot, Buba first ducked down to avoid getting struck again, but then ran into the store for assistance. Finding no one there to help her, she ran to a nearby bus stop where a stranger agreed to drive her to the hospital. At the hospital, Buba learned that her gunshot wound had severely injured her jaw.

The entire incident was captured clearly on surveillance cameras both inside and outside the 7-Eleven. Video recordings from inside the store just before the shooting showed appellant, Maurice Turner, and Victoria Underwood standing near the store's front counter. Appellant then appeared to notice a red Dodge sedan arrive in the parking lot and back into a parking space at the far left of the 7-Eleven parking lot. After glancing at Turner, appellant immediately left the store; Turner and Underwood followed him. All three then turned to the left and walked to a gray Chevrolet Malibu parked at the far right side of the 7-Eleven parking lot. Underwood got into the front passenger seat of the car, and Turner took the rear seat on the passenger side. Buba's car, parked near the store's entrance, was positioned between the Malibu and the red Dodge sedan.

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, this Court discards any of appellant's conflicting evidence, and regards as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn therefrom. *Id.* at 473.

As soon as he approached the Malibu, appellant reached through the driver's door and retrieved a gun. Around that same time, a passenger from the red sedan took several steps toward the sidewalk and store entrance. Over the roof of the Malibu, appellant began shooting in the direction of that unidentified male, who immediately retreated into the red sedan.[2] The videos showed that while appellant was firing his gun, Buba's car window was struck and subsequently shattered. Donavan Copeland then exited the back seat of the Malibu, fired a shot toward the red sedan, and fled with appellant behind the 7-Eleven. Turner also got out of the car and shot at the red sedan as it sped out of the parking lot. He then entered the driver's seat of the Malibu and drove it away from the scene.

About 20 minutes after the shooting was reported, police saw the gray Malibu exit a parking garage on Duke Street, within a mile of the 7-Eleven. The police stopped the car at a McDonald's and found appellant, Underwood, Copeland, and Turner inside. During their search of the car, police recovered three loaded nine-millimeter semi-automatic pistols.

The police also collected 13 nine-millimeter cartridge casings and one bullet from the scene of the shooting. All the cartridge casings were concentrated in the right side of the 7-Eleven lot near where the Malibu had been parked. No cartridge casings were found in the left area of the lot where the red sedan had parked. A single bullet was recovered from a Toyota Camry that had been parked beside Buba's car. The police ultimately determined that the bullet and nine of the cartridge casings were fired from one of the guns found in the Malibu. DNA testing linked that gun to appellant.

---

[2] In his statement of facts on brief, without reference to the trial court record as required by Rule 5A:20(d), appellant asserts that the unidentified male "call[ed] out to" him, while "quickly approaching" the Malibu, and "reach[ed] into his waistband." This Court finds no evidence in the record to support a conclusion that the unidentified male spoke to appellant or that he took more than a few steps away from the red sedan and toward the entrance of the store. In fact, the video evidence showed that the male did not even reach the doors of the 7-Eleven, which separated the red sedan from the Malibu, before appellant began shooting.

While investigating the shooting incident, Officer Edward Hughes collected the video evidence from both inside and outside the 7-Eleven. He later testified that the exterior camera recordings showed appellant, Turner, and Copeland as the only individuals firing guns at the scene. The video did not show the unidentified male produce a gun or point a gun at anyone.

Appellant was indicted on charges of malicious wounding, using a firearm in the commission of a felony, and maliciously shooting at an occupied vehicle. At the conclusion of appellant's jury trial, the City of Alexandria Circuit Court (the "trial court") instructed the jury that, if it failed to find that the shooting was malicious, it could find appellant guilty of the lesser offenses of unlawful wounding and unlawfully shooting at an occupied vehicle. The trial court further instructed the jury on legal concepts relating to self-defense and crimes committed in the heat of passion. The jury, however, found appellant guilty of malicious wounding and maliciously shooting into an occupied vehicle as well as for the felonious use of a firearm. This appeal followed.

ANALYSIS

Appellant challenges the sufficiency of the evidence to sustain his convictions for malicious wounding and maliciously shooting into an occupied vehicle. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might

differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

This deferential principle "is not limited solely to matters of witness credibility[;] [w]e [also] owe deference to the trial court's interpretation of all of the evidence, including video evidence that we are able to observe much as the trial court did." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022); *see also Ingram*, 74 Va. App. at 77 ("[I]nferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact." (quoting *Hancock v. Commonwealth*, 12 Va. App. 774, 782 (1991))). "Such deference stems not from the trial court being in a superior position to view the video evidence," as is true regarding witness testimony, but rather from the difference in roles between the trier of fact and this Court. *Meade*, 74 Va. App. at 806. Unlike the factfinder, this Court reviews video evidence on appeal "not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the [factfinder] did." *Id.*

Appellant does not dispute that he fired the shot that wounded Buba and that any criminal intent he had when shooting the gun at other persons transferred to his actions against her.[3] *See Blow v. Commonwealth*, 52 Va. App. 533, 541 (2008) ("The doctrine of transferred intent permits a fact finder to transpose a defendant's criminal intent to harm an intended victim to another unintended, but harmed, victim."). Rather, appellant maintains that he fired the gun without malice either in self-defense or in the heat of passion.

"Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "Whether or not an accused acted with

---

[3] Indeed, the evidence showed that Buba's car window was damaged while appellant was the only person firing a gun, before Donovan and Turner joined the fray. Thus, the evidence established that it was a bullet from appellant's gun that struck and wounded Buba.

malice is generally a question of fact and may be proved by circumstantial evidence." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)). "[M]alice may be either express or implied by conduct." *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)). Specifically, "[m]alice may be inferred from the deliberate use of a deadly weapon," *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000), or when the defendant "willfully or purposefully, rather than negligently, embarked upon a course of wrongful conduct likely to cause death or great bodily harm," *Watson-Scott*, 298 Va. at 257 (quoting *Essex*, 228 Va. at 280-81).

"Deliberate and purposeful acts may nonetheless be done without malice if they are done in the heat of passion." *Williams v. Commonwealth*, 64 Va. App. 240, 249 (2015). Heat of passion "excludes malice when provocation reasonably produces fear [or anger] that causes one to act on impulse without conscious reflection." *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003) (alteration in original) (quoting *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000)). "Heat of passion is determined by the nature and degree of the provocation and may be founded upon rage, fear or a combination of both." *Id.* at 200-01 (quoting *Barrett v. Commonwealth*, 231 Va. 102, 106 (1986)).

The evidence here proved that, upon noticing the arrival of the red sedan at 7-Eleven, appellant immediately left the store, returned to the Malibu, and armed himself with a gun. He then started shooting as the unidentified male from the sedan began walking toward the store's entrance. Even assuming the male reached toward his waistline while walking, as appellant avers, the record contains no evidence that he ever produced a gun or otherwise provoked or threatened appellant. Furthermore, the unidentified male immediately retreated to the sedan once appellant began shooting and he remained there while appellant continued to fire his gun

- 6 -

repeatedly. All told, appellant fired ten shots and struck Buba in the process. Thus, a reasonable finder of fact could conclude that appellant fired the gun with malice and not in the heat of passion.

Appellant alternatively asserts that he acted in self-defense. "Self-defense is an affirmative defense . . . and in making such a plea, a 'defendant . . . assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.'" *Commonwealth v. Sands*, 262 Va. 724, 729 (2001) (quoting *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978)). The "defendant must have reasonably feared death or serious bodily injury from his victim, and there must have been an overt threat." *Taylor v. Commonwealth*, 77 Va. App. 149, 171 (2023) (quoting *Peeples v. Commonwealth*, 30 Va. App. 626, 634 (1999) (en banc)).

"An overt act is an act suggesting present danger which 'afford[s] a reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution.'" *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019) (alterations in original) (quoting *Sands*, 262 Va. at 729). In addition, the "force used must be reasonable in relation to the harm threatened." *Caison v. Commonwealth*, 52 Va. App. 423, 440 (2008) (quoting *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact" to which this Court defers on appeal. *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "The trier of fact determines the weight of evidence in support of a claim of self-defense." *Gardner v. Commonwealth*, 3 Va. App. 418, 426 (1986).

Nothing in the video evidence or the trial testimony established an overt act justifying or excusing appellant opening fire across the 7-Eleven parking lot and shooting his gun ten times.

- 7 -

As noted above, the record contains no direct evidence showing that the unidentified male threatened appellant at all, let alone with any weapon. In fact, upon noticing the arrival of the red sedan, appellant immediately exited the store, grabbed a gun from the Malibu, and fired it toward the red sedan without hesitation. He did not stop firing even after the other male had retreated into the red sedan.

A defendant may not claim he had a right to arm himself for self-protection when he obtained a gun *before* he had a reasonable belief another person intended to injure or harm him. *See Jordan v. Commonwealth*, 219 Va. 852, 855-56 (1979) ("[a] man cannot go a-gunning for an adversary" and then claim he acted in self-defense (quoting *Sims v. Commonwealth*, 134 Va. 736, 760 (1922))). Accordingly, a reasonable finder of fact could conclude that appellant neither retrieved nor fired his gun in self-defense and that he was instead guilty of malicious wounding and maliciously shooting at an occupied vehicle.

CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment.

*Affirmed.*